# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                                             :
In re:                                                       :   Chapter 11
                                                             :
DEVONSHIRE PGA HOLDINGS, LLC,                                :   Case No. 13-12460 (_____)
et al.,¹                                                     :
                                                             :   (Joint Administration Pending)
Debtors.                                                     :
-------------------------------------------------------------x
```

## DISCLOSURE STATEMENT FOR JOINT CHAPTER 11 PLAN OF REORGANIZATION

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE CHAPTER 11 PLAN DESCRIBED HEREIN.  ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS DISCLOSURE STATEMENT IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN.  THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.**

| | |
|---|---|
| M. Blake Cleary, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone:  (302) 571-6714<br>Fax: (302) 576-3287<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* | R. Craig Martin<br>DLA Piper LLP (US)<br>919 North Market Street, Suite 1500<br>Wilmington, DE, 19801<br>Tel:      (302) 468-5700<br>Fax:     (302) 394-2341<br>-and-<br>Thomas R. Califano<br>Gabriella L. Zborovsky<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas, 27th Floor<br>New York, NY 10020<br>Tel:      (212) 335-4500<br>Fax:     (212) 335-4501<br><br>*Counsel to ELP West Palm, LLC, the Secured Lender* |

**Dated:**  September 19, 2013
         Wilmington, Delaware

---

¹       The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: Devonshire PGA Holdings, LLC (2843), Devonshire at PGA National, LLC (2904), Chatsworth at PGA National, LLC (3412) and Chatsworth PGA Properties, LLC (3472).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is 350 Devonshire Way, Palm Beach Garden, FL 33418.

ELP WEST PALM, LLC AND THE ABOVE CAPTIONED DEBTORS AND DEBTORS IN POSSESSION ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR DEVONSHIRE PGA HOLDINGS, LLC AND ITS SUBSIDIARIES (AS AMENDED, MODIFIED, OR SUPPLEMENTED, THE "**PLAN**") TO HOLDERS OF CLAIMS AND INTERESTS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN.  NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.  NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT.  THE PLAN PROPONENTS URGE EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY.  FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE PLAN PROPONENTS OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAVE PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.  SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR

OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE READER IS CAUTIONED THAT ALL FORWARD LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD LOOKING STATEMENTS.

THIS DISCLOSURE STATEMENT CONTAINS OR MAY CONTAIN, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, AND CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT MAY BE ATTACHED HERETO AND/OR INCORPORATED HEREIN BY REFERENCE.  ALTHOUGH THE PLAN PROPONENTS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.  THE PLAN PROPONENTS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.  ANY FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.

THE PLAN PROPONENTS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE PLAN PROPONENTS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE PLAN PROPONENTS HAVE NO AFFIRMATIVE DUTY TO DO SO.  HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED.

**PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS, ALTERNATIVES TO CONFIRMATION, AND CONSUMMATION OF THE PLAN, ALL DESCRIBED IN GREATER DETAIL HEREIN.**

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

    A.    Overview of Chapter 11 ................................................................................ 1

    B.    Rules of Interpretation and Construction .................................................... 2

    C.    Recommendation of the Plan Proponents and Plan Overview ..................... 2

    D.    Summary of Confirmation Requirements .................................................... 3

    E.    Voting Instructions and Deadline ................................................................ 4

        1.    General Information ......................................................................... 4

        2.    Unimpaired Classes Are Deemed to Accept the Plan and Do Not Vote ................................................................................................ 4

        3.    Claims Which Are Not Allowed ..................................................... 4

        4.    Voting and Record Date .................................................................. 5

II.     BACKGROUND INFORMATION ............................................................................. 6

    A.    Overview of the Debtors' Business ............................................................. 6

    B.    Organizational Structure of the Debtors ..................................................... 6

    C.    Residents ...................................................................................................... 7

    D.    Management of the Facility .......................................................................... 7

    E.    Regulatory Agencies ................................................................................... 7

    F.    Debtors' Prepetition Capital Structure ........................................................ 8

        1.    ELP Credit Agreement .................................................................... 8

        2.    Mezzanine Credit Agreement ......................................................... 8

    G.    Florida Foreclosure Action .......................................................................... 9

    H.    UCC Auction of Mezzanine Interests ....................................................... 10

III.    EVENTS LEADING TO BANKRUPTCY ............................................................... 11

IV.     EVENTS EXPECTED TO OCCUR DURING DEBTOR'S CHAPTER 11 CASES ........................................................................................................................ 11

    A.    Anticipated Events During the Chapter 11 Cases ..................................... 11

V.      SUMMARY OF THE CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS ........................................................................................................ 14

    A.    Treatment of Claims and Interests Under the Plan .................................... 14

    B.    Treatment of Unclassified Claims Under the Plan .................................... 16

        1.    Administrative Expense Claims .................................................... 16

        2.    Compensation and Reimbursement Claims .................................. 16

|   |   | 3. | Priority Tax Claims | 16 |

| C. | Treatment of Classified Claims and Interests Under the Plan | 17 |

HOLDINGS PLAN ........................................................................................... 17

|   | 1. | Other Priority Claims (Class 1A) | 17 |
|   | 2. | HJSI-II, LLC Secured Claim (Class 2A) | 17 |
|   | 3. | Other Secured Claims (Class 3A) | 17 |
|   | 4. | General Unsecured Claims (Class 4A) | 17 |
|   | 5. | Interests in Holdings (Class 5A): | 18 |

DEVONSHIRE PLAN ....................................................................................... 18

|   | 1. | Other Priority Claims (Class 1B) | 18 |
|   | 2. | ELP Secured Claims (Class 2B) | 18 |
|   | 3. | Other Secured Claims(Class 3B) | 18 |
|   | 4. | General Unsecured Claims (Class 4B): | 19 |
|   | 5. | Interests in Devonshire (Class 5B) | 19 |

CHATSWORTH AT PGA PLAN ....................................................................... 19

|   | 1. | Other Priority Claims (Class 1C) | 19 |
|   | 2. | ELP Secured Claims (Class 2C) | 19 |
|   | 3. | Other Secured Claims(Class 3C) | 20 |
|   | 4. | General Unsecured Claims (Class 4C) | 20 |
|   | 5. | Interests in Chatsworth at PGA (Class 5C): | 20 |

CHATSWORTH PROPERTIES PLAN ............................................................. 20

|   | 1. | Other Priority Claims (Class 1D) | 20 |
|   | 2. | ELP Secured Claims (Class 2D): | 21 |
|   | 3. | Other Secured Claims(Class 3D): | 21 |
|   | 4. | General Unsecured Claims (Class 4D): | 21 |
|   | 5. | Interests in Chatsworth Properties (Class 5D): | 21 |

| D. | Acceptance or Rejection of the Plan | 22 |

|   | 1. | Impaired Classes | 22 |
|   | 2. | Acceptance by a Class | 22 |

| E. | Means for Implementation of the Plan | 22 |

|   | 1. | Separate Plans | 22 |

2.      No Double Payment of Claims ................................................................ 22

3.      Severability of Plans ............................................................................... 23

4.      Sources of Cash for Plan Distributions................................................... 23

5.      New Property Management Agreements .................................................. 23

6.      Assumption of Residency Contracts ....................................................... 23

7.      Corporate Existence ................................................................................ 23

8.      Managers of Reorganized Debtors.......................................................... 23

9.      Officers of Reorganized Debtors ............................................................ 23

10.     Vesting of Assets in the Reorganized Debtors ....................................... 24

11.     Restructuring Transactions ..................................................................... 24

12.     Corporate Actions ................................................................................... 24

13.     Transfer Tax Exemption ......................................................................... 25

14.     Cancellation of Agreement, Notes and Interests..................................... 25

15.     Non-Voting Equity Securities.................................................................. 25

16.     Change in Control.................................................................................... 25

17.     Preservation of Causes of Action of the Debtors.................................... 26

F.      Distributions Under the Plan............................................................................... 26

1.      Date of Distributions............................................................................... 26

2.      Disbursing Agent .................................................................................... 27

3.      Powers of Disbursing Agent ................................................................... 27

4.      Delivery of Distributions ........................................................................ 27

5.      Manner of Payment.................................................................................. 27

6.      Setoffs ..................................................................................................... 27

7.      Distributions After Effective Date .......................................................... 28

8.      No Postpetiton Interest............................................................................ 28

9.      Distributions Free and Clear ................................................................... 28

10.     Fractional Dollars; De Minimis Distributions ........................................ 28

11.     Prepayment ............................................................................................. 28

G.      Procedures for Disputed Claims ......................................................................... 28

1.      Allowance of Claims and Interests ......................................................... 28

2.      Objections to Claims................................................................................ 29

|  | 3. | Estimation of Claims | 29 |
|  | 4. | Distributions Relating to Disputed Claims | 29 |
|  | 5. | Distributions after Allowance | 29 |
|  | 6. | Rights to Settle Claims | 30 |
| H. |  | Executory Contracts and Unexpired Leases | 30 |
|  | 1. | Assumption and Rejection of Contracts and Leases | 30 |
|  | 2. | Inclusiveness | 30 |
|  | 3. | Payments Related to Assumption of Contracts and Leases | 30 |
|  | 4. | Rejection Damages Claims | 31 |
|  | 5. | Insurance Policies | 31 |
|  | 6. | Contracts and Leases Entered Into After the Petition Date | 31 |
| I. |  | Conditions Precedent to Confirmation and Effective Date | 31 |
|  | 1. | Conditions to Confirmation of Plan | 31 |
|  | 2. | Conditions Precedent to Effective Date of the Plan | 32 |
|  | 3. | Waiver of Conditions | 32 |
|  | 4. | Effect of Failure of Conditions | 32 |
| J. |  | Settlement, Release, Injunction And Related Provisions | 32 |
|  | 1. | Binding Effect | 32 |
|  | 2. | Compromise and Settlement of Claims, Interests and Controversies | 33 |
|  | 3. | Claims Against Guarantors | 33 |
|  | 4. | Discharge | 33 |
|  | 5. | Injunction | 34 |
|  | 6. | Term of Injunctions or Stays | 34 |
|  | 7. | Injunction Against Interference with Plan | 34 |
|  | 8. | Debtor Releases | 34 |
|  | 9. | Exculpation | 35 |
|  | 10. | Third Party Releases | 36 |
|  | 11. | Release of Liens | 36 |
| K. |  | Retention of Jurisdiction | 36 |
| L. |  | Miscellaneous Provisions of the Plan | 38 |
|  | 1. | Successors and Assigns | 38 |

|  | 2. | Payment of Statutory Fees | 38 |
|  | 3. | Substantial Consummation | 38 |
|  | 4. | Amendments | 38 |
|  | 5. | Effectuating Documents and Further Transactions | 39 |
|  | 6. | Revocation or Withdrawal of the Plan | 39 |
|  | 7. | Severability | 39 |
|  | 8. | Governing Law | 39 |
|  | 9. | Time | 40 |
|  | 10. | Entire Agreement | 40 |
|  | 11. | Section 1125(c) Good Faith Compliance | 40 |
|  | 12. | Solicitation | 40 |
| VI. | RISKS AND CONSIDERATIONS | | 41 |
|  | A. | Bankruptcy Considerations | 41 |
|  | B. | No Duty to Update Disclosures | 42 |
|  | C. | Representations Outside this Disclosure Statement | 42 |
|  | D. | No Admission | 42 |
|  | E. | Tax and Other Related Considerations | 43 |
| VII. | PLAN CONFIRMATION AND CONSUMMATION | | 43 |
|  | A. | Plan Confirmation Hearing | 43 |
|  | B. | Plan Confirmation Requirements Under the Bankruptcy Code | 43 |
|  | C. | Plan Consummation | 44 |
|  | D. | Best Interests of Creditors Test | 44 |
|  | E. | Liquidation Analysis | 44 |
|  | F. | Feasibility | 45 |
|  | G. | Acceptance by Impaired Classes | 45 |
|  | H. | Section 1129(b) | 46 |
|  |  | 1. No Unfair Discrimination | 46 |
|  |  | 2. Fair and Equitable | 46 |
| VIII. | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN | | 47 |
|  | A. | Chapter 7 Liquidation | 47 |
|  | B. | Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code | 48 |

       C.      Dismissal of the Debtors' Chapter 11 Cases ....................................................... 48

IX.    CERTAIN FEDERAL TAX CONSEQUENCES ........................................................... 48

X.    RECOMMENDATION AND CONCLUSION............................................................... 50

## I.    INTRODUCTION

Devonshire at PGA National, LLC ("**Devonshire**"), Chatsworth at PGA National, LLC ("**Chatsworth at PGA**"), Chatsworth PGA Properties, LLC ("**Chatsworth Properties**" and together with Devonshire and Chatsworth at PGA, the "**Operating Debtors**"), Devonshire PGA Holdings, LLC ("**Holdings**" and together with the Operating Debtors, the "**Debtors**") and ELP West Palm, LLC, the Operating Debtors' secured lender ("**ELP**" and together with the Debtors, the "**Plan Proponents**"), jointly prepared this Disclosure Statement in connection with the solicitation of votes for acceptance of the Plan.  This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtors' creditors to make an informed judgment about the Plan, including whether to vote to accept or reject the Plan.  A copy of the Plan is attached hereto as Exhibit 1 and is incorporated by reference.

To the extent that the information provided in this Disclosure Statement and the Plan (including any attached exhibits) are in conflict, the terms of the Plan (including any attached exhibits) will control.  Creditors should refer only to this Disclosure Statement and the Plan to determine whether to vote to accept or reject the Plan.

The Plan Proponents believe that approval of the Plan is in the best interests of the Debtors' Estates and all parties in interest.  The Operating Debtors' assets, including, among other things, the continuing care retirement community in Palm Beach Gardens, Florida, known as Devonshire at PGA National and all money, contract rights, chattel paper, documents, deposit accounts, securities, securities accounts, investment property, general intangibles, health care insurance receivables, inventory, machinery, equipment, fixtures and proceeds thereof, are subject to valid, perfected first priority secured claims in favor of ELP, and the estimated value of such assets is substantially less than the amount of ELP's Secured Claims.  Accordingly, the Plan, which provides for the payment in full of allowed administrative, priority and unsecured claims, presents the best chance for any recovery for creditors of the Debtors' Estates.  Any additional delay in the resolution of these Chapter 11 Cases will result in additional administrative expenses and claims to the detriment of the Debtors' Estates and all parties in interest.

**PURSUANT TO THE BANKRUPTCY CODE, ONLY CREDITORS WHO ACTUALLY VOTE ON THE PLAN WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER THE REQUIRED NUMBER OF ACCEPTANCES HAS BEEN OBTAINED.**

### A.    Overview of Chapter 11.

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for similarly situated holders of claims and equity interests, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the commencement of the chapter 11 case.  The

Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code, to the terms and conditions of the confirmed plan. Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan provides for the treatment of claims and equity interests in accordance with the terms of the confirmed plan.

Prior to soliciting acceptances of a proposed chapter 11 plan, section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the chapter 11 plan. This Disclosure Statement is being submitted by the Plan Proponents in accordance with the requirements of section 1125 of the Bankruptcy Code.

### B.    Rules of Interpretation and Construction.

Unless otherwise specified, all section or exhibit references in the Disclosure Statement are to the respective section in, or exhibit to, the Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Disclosure Statement as a whole and not to any particular section, subsection, or clause contained therein. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Disclosure Statement. The headings in this Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the interpretation of the Disclosure Statement. Unless otherwise provided, any reference in this Disclosure Statement to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified. Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral. In computing any period of time set forth in the Disclosure Statement, the provisions of Bankruptcy Rule 9006(a) shall apply.

All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

### C.    Recommendation of the Plan Proponents and Plan Overview.

The Plan Proponents believe that the Plan, which contemplates a restructuring and reorganization of the Debtors, will allow for a prompt resolution to the Debtors' chapter 11 cases and will achieve the best possible result for claimants. The following is a brief overview of the Plan and it is qualified by reference to the Plan itself.

The Plan is the result of negotiations by and among the Debtors and their respective secured lenders, ELP and HJSI Devonshire II, LLC ("**HJSI-II, LLC**") (also the sole member of

- 2 -

Holdings).  The Plan provides for the payment and/or full satisfaction of all Allowed Claims, including Allowed Administrative, Priority Tax, Other Priority and General Unsecured Claims. The Plan also provides that the Holder of the Allowed HJSI-II, LLC Secured Claim, in partial satisfaction and discharge of and in exchange for such Allowed HJSI-II, LLC Secured Claim, shall receive a payment in the aggregate total amount of $3,000,000 (the "**Mezz Payment**"). Further, the Holder of Allowed ELP Secured Claims, in partial satisfaction of and in exchange for such Allowed Claims and the Mezz Payment, will receive 100% of the Interests in Reorganized Holdings.

The potential recoveries are only estimates and the actual recovery will either increase or decrease depending upon the occurrence or non-occurrence of numerous factors, including, but not limited to, the risk factors discussed in Article VIII of this Disclosure Statement.

Accordingly, HJSI-II, LLC and ELP, as the only creditors entitled to vote on the Plan, intend to vote in favor of acceptance of the Plan.

### D.    Summary of Confirmation Requirements.

Under the Bankruptcy Code, only classes of claims that are "impaired" are entitled to vote to accept or reject the Plan.  The Bankruptcy Code requires, as a condition to confirmation of a consensual plan of reorganization, that each impaired class of claims accepts the Plan.  A class of creditors is deemed to accept a plan if the holders of at least two-thirds in dollar amount, and more than one-half in number, of those creditors that actually cast ballots, vote to accept such plan.  A class of interest holders is deemed to accept a plan if the holders of at least two-thirds in amount of those interest holders that actually cast ballots, vote to accept such plan.

Liabilities incurred in the ordinary course of business by the Debtors since the Petition Date that are described in the Plan as Allowed Administrative Claims will be paid on the later of the Effective Date and the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor shall be paid in full and performed by the applicable Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.  Holders of Administrative Claims will not be entitled to vote on the Plan.

Any Claims arising from the rejection of executory contracts and unexpired leases are treated under the Bankruptcy Code as if they arose before the filing of the Chapter 11 petition.

Any Claim in an impaired Class that is subject to a pending objection or is scheduled as unliquidated, disputed or contingent is not entitled to vote unless the holder of such Claim has obtained an order of the Court temporarily allowing the Claim for the purpose of voting on the Plan.

E.      **Voting Instructions and Deadline.**

The Debtors have prepared this Disclosure Statement as required by Bankruptcy Code section 1125 and Bankruptcy Rule 3016(c).  It is being distributed to holders of Claims and Interests against the Debtors to assist such holders in evaluating the feasibility of the Plan, the manner in which their Claims and Interests are treated and in determining that the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.  A copy of the Plan is attached hereto as <u>Exhibit 1</u>.  The purpose of this Disclosure Statement is to assist those entitled to vote on the Plan to make an informed judgment in voting to accept or reject the Plan.

This Disclosure Statement is subject to the Court's approval, as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the Classes whose votes are being solicited to make an informed judgment with respect to the Plan.

THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION WITH RESPECT TO THE MERITS OF THE PLAN. ALL CREDITORS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN.

This Disclosure Statement describes the background of the Debtors and the significant events leading up to and following the filing of the Chapter 11 Cases on the Petition Date.  It summarizes the major events that have taken place during the Debtors' Chapter 11 Cases and describes the Plan, which divides creditor Claims and Interests into Classes and provides for the treatment of Allowed Claims and Allowed Interests.

      1.      **General Information**.  Under the Bankruptcy Code, certain Classes of creditors are deemed to accept or reject the Plan and the vote of these Classes will not be solicited.

      2.      **Unimpaired Classes Are Deemed to Accept the Plan and Do Not Vote**. If a Creditor holds a Claim included within a Class that is not impaired under the Plan, under Bankruptcy Code section 1126(f), the Creditor is deemed to have accepted the Plan with respect to such Claim and its vote of such Claim will not be solicited.  Classes 1A, 3A, 4A, 1B, 3B, 4B, 6B, 1C, 3C, 4C, 6C, 1D, 3D, 4D and 6D are unimpaired under the Plan.

      3.      **Claims Which Are Not Allowed**.  The Bankruptcy Code provides that only the holders of Allowed Claims are entitled to vote on the Plan.  A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection and allows the Claim.  If the Bankruptcy Court has not ruled on the objection or status of such a Claim, but the holder of a Claim wishes to vote, the holder of the Claim may petition the Court to estimate its claim for voting purposes under Bankruptcy Rule 3018(a).  Consequently, although holders of such Claims may receive ballots, their votes will not be counted unless the

Bankruptcy Court, prior to the Voting Deadline, rules on the objection and allows the Claim or, on proper request under Bankruptcy Rule 3018(a) prior to the hearing on Confirmation, temporarily allows the Claim in an amount that the Court deems proper for the purpose of voting on the Plan.

4.    **Voting and Record Date**.  If a Creditor holds a Claim classified in a voting Class of Claims under the Plan, the Creditor's acceptance or rejection of the Plan is important and must be in writing and filed on time. The record date for determining which creditors may vote on the Plan is [September __, 2013].  The Voting Deadline is [September __, 2013] at 5:00 p.m. (prevailing Eastern Time).

   a.    <u>How to Vote</u>.  IN ORDER FOR A VOTE TO BE COUNTED, THE BALLOT MUST BE PROPERLY COMPLETED IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND RETURNED TO THE VOTING AGENT BY THE VOTING DEADLINE, AS EACH IS APPLICABLE.

   b.    <u>Ballots</u>.  Creditors must use only the ballot or ballots sent to them with this Disclosure Statement.  If a Creditor has Claims in more than one Class, it should receive multiple ballots.  IF A CREDITOR RECEIVES MORE THAN ONE BALLOT THE CREDITOR SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM AND SHOULD COMPLETE AND RETURN ALL OF THEM.

**IF A CREDITOR IS A MEMBER OF A VOTING CLASS AND DID NOT RECEIVE A BALLOT FOR SUCH CLASS, OR IF SUCH BALLOT IS DAMAGED OR LOST, OR IF A CREDITOR HAS ANY QUESTIONS CONCERNING VOTING PROCEDURES, PLEASE CONTACT:**

**Via Regular Mail**:

Devonshire PGA Holdings, LLC Ballot Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5014
New York, NY 10150- 5014

**Via Overnight Courier or Hand Delivery:**

Devonshire PGA Holdings, LLC Ballot Processing
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

II.    **BACKGROUND INFORMATION**

A.    **Overview of the Debtors' Business.**

The Debtors have owned The Devonshire at PGA National (the "**Facility**"), a for-profit continuing-care retirement community located in Palm Beach Gardens, Florida, since 2007.  The Facility is comprised of two components: (1) an independent living facility with 327 independent living units consisting of three 4-story residential towers all connected to a central clubhouse (the "**Independent Living Facility**") and (2) an assisted living and skilled nursing facility with a total of 110 units (34 assisted living units and 76 skilled nursing units), a number of which are also designated as Alzheimer's/dementia care units (the "**Chatsworth Medical Facility**").

The Facility is a residential alternative for older adults (generally age 65 and older) that provides flexible housing options, a coordinated system of services and amenities, and a continuum of care that addresses the varying health and wellness needs of residents as they grow older.  The Facility enables residents to remain in the same community and avoid having to move—except, perhaps, to another level of care within the community—if their needs change and they require additional health care and supervision.  Remaining within the Facility allows the residents to continue their existing personal relationships, avoid the stress of a move; and receive health care, should it be needed, in a familiar environment.

B.    **Organizational Structure of the Debtors.**

Devonshire is wholly-owned by Holdings.  Devonshire, in turn, in addition to owning and operating the Independent Living Facility, wholly owns both Chatsworth at PGA, which provides the skilled nursing care to residents of the Chatsworth Medical Facility, and Chatsworth Properties, which owns property on which the Chatsworth Medical Facility is located.  A chart demonstrating the corporate structure of the Debtors is below:



### C.    Residents.

The Facility operates as an entrance fee continuing care retirement community that utilizes a "Type A" residency agreement under which independent living residents pay a one-time entrance fee and a monthly service fee to reside at the Facility.  In exchange for the one-time entrance fee, the resident has the exclusive right to occupy and use a specified "living accommodation" in the development.  Independent living residents at the Facility can choose from three Residency Contracts, which provide for either 0%, 50% or 90% refundability of the entrance fees.  Independent living residents also have priority access to the assisted living, Alzheimer's and skilled nursing units located at the Chatsworth Medical Facility, although a separate health center admission agreement is required.

### D.    Management of the Facility.

The business operations of Devonshire are managed by SHP Senior Living Services, LLC ("**SHP Senior Living**") and the business operations of Chatsworth at PGA are managed by SHP Health Care Services, LLC ("**SHP Health Care**" and together the "**SHP Property Managers**")  under two separate agreements (the "**Services Agreements**").  On or about September 19, 2013, the Debtors filed a motion to reject the Services Agreements.

Under the Services Agreements, the SHP Property Managers manage the Facility in the name of and for the respective Debtors, including but not limited to, managing the day-to-day operations, preparation of and compliance with budgets, managing a separate "Staffing Company" concerning the hiring and firing of employees, and other matters as set forth in the Services Agreements.

The Services Agreement requires payment of a management fee on a monthly basis based on the operation of (i) $60,587, adjusted annually by a defined consumer price index or (ii) five percent of defined "Facility Revenue."  Payment of the services fee during an event of default is reduced and limited by the terms of the Conditional Assignments of Management Agreements, entered into for the benefit of the lenders under the ELP Credit Agreement.

### E.    Regulatory Agencies.

The continuing care retirement community industry nation-wide is heavily-regulated by various state and federal agencies.  Each state has a different regulatory regime in this area, particularly with respect to disclosure of financial statements, solvency of the facility, maintenance of a certain amount of reserves, and the refunding of fees and deposits.  As a continuing care retirement community operating in the State of Florida, the Debtors receive regulatory oversight jointly from the Florida Office of Insurance Regulation ("**OIR**") and the Florida Agency for Health Care Administration ("**AHCA**").  The Devonshire currently holds a Certificate of Authority issued by the OIR.  The Chatsworth at PGA currently holds a Nursing Home License (License No. 130471003) issued by the AHCA and an Assisted Living Facility License (License No. 9586) issued by AHCA.

**F.     Debtors' Prepetition Capital Structure.**

**1.     ELP Credit Agreement**

On or about May 1, 2007, the Operating Debtors entered into a Credit and Security Agreement with Merrill Lynch Capital ("**Merrill Lynch**"), as amended (the "**ELP Credit Agreement**"), pursuant to which a loan was advanced in the stated principal sum of $161,620,000 which was subsequently transferred to ELP (the "**ELP Loan**").  Merrill Lynch served as the initial Administrative Agent of the ELP Loan.  On February 4, 2008, Merrill Lynch was acquired by GE Business Financial Services, Inc. ("**GE**"), after which GE became Administrative Agent of the ELP Loan.  On October 7, 2011, GE Resigned as Administrative Agent.   Trimont Real Estate Advisors, Inc. ("**Trimont**") was appointed the successor Administrative Agent in April, 2012.

The ELP Loan consists of (a) a Term Note (Note A), dated May 1, 2007, in the principal sum of $75,000,000, (b) a Term Note, dated May 1, 2007, in the principal sum of $40,000,000, which, in or about August, 2007, was subsequently amended and restated into two separate promissory notes, an Amended and Restated Term Note (Note B-1) in the original principal amount of $20,000,000 and an Amended and Restated Term Note (Note B-2) in the original principal amount of $20,000,000, and (c) a Term Note (Note C), dated on or about May 1, 2007, in the original principal sum of $40,220,000 (all of which are collectively referred to as the "**Notes**").  On or about July 24, 2013, ELP became the sole holder of the Notes and sole lender under the ELP Credit Agreement.

The ELP Credit Agreement is secured by a first priority Lien on and security interest in, to all right, title and interest in any to any and all property and interests in property of the Operating Debtors, all as more fully set forth in the ELP Credit Agreement.  The ELP Loan is also secured by, among other things, a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Mortgage**") executed by Devonshire and Chatsworth Properties and delivered to Merrill Lynch, as Administrative Agent.  The Mortgage was recorded on May 2, 2007 in Official Record Book 21689 at Page 872 of the public records of Palm Beach County, Florida.  Devonshire and Chatsworth Properties also executed an Assignment of Leases and Rents, which was recorded on May 2, 2007 in Official Record Book 21689, Page 0897 of the public records of Palm Beach County, Florida.

The Operating Debtors are in default of the obligations under the ELP Credit Agreement, the ELP Loan and the Mortgage by, among other things, failing to pay all amounts due and owing by the maturity date of April 30, 2012.  As of the Maturity Date, the Operating Debtors jointly and severally owe the aggregate principal sum of $158,193,915.93, together with interest of $236,946.39, with interest thereafter accruing at the default rate set forth in applicable documents.

**2.     Mezzanine Credit Agreement**

On or about May 1, 2007, Holdings entered into a Credit and Security Agreement with Merrill Lynch, as amended (the "**Mezzanine Credit Agreement**"), pursuant to which a loan was advanced in the stated principal sum of $19,625,000 (the "**Mezz Loan**").  The Mezz Loan is

evidenced by that certain Mezzanine Promissory Note, dated as of May 1, 2007.  Following a series of assignments, HJSI-II, LLC became the sole lender under the Mezzanine Credit Agreement on or about April 2013.

The Mezzanine Credit Agreement and the obligations thereunder are secured by a continuing first priority Lien on and security interest in, all right, title and interest in and to any and all property and interest in property of Holdings, all as more fully set forth in the Mezzanine Credit Agreement.  As additional security for the Mezz Loan, SHP Senior Living Investments, LLC (Holdings' sole member, "**SHP**"), entered into that certain Ownership Pledge, Assignment and Security Agreement dated May 1, 2007 with Merrill Lynch, as lender and administrative agent (the "**SHP Pledge Agreement**").  Under the SHP Pledge Agreement, SHP pledged, assigned and granted to the administrative agent, for the benefit of the Mezzanine Lender (as defined in the SHP Pledge Agreement) and administrative agent, a security interest in the Collateral (as defined in the SHP Pledge Agreement), and which includes, among other things, all of the stock, shares, membership interests, partnership interests and other equity ownership interests in Holdings now or hereafter held by SHP (collectively, the "**Ownership Interests**") and all rights privileges, authority and powers of SHP as owner or holder of its Ownership Interests, all as more fully set forth in the SHP Pledge Agreement.

Holdings is in default of the obligations under the Mezzanine Credit Agreement by, among other things, failing to pay all amounts due and owing by the maturity date of April 30, 2012.  As of September 11, 2013, Holdings owed the aggregate principal sum of $20,156,718, with interest thereafter accruing at the default rate set forth in applicable documents.

As stated below, on September 12, 2013, a foreclosure sale was held on the rights under the SHP Pledge Agreement.  Pursuant to that foreclosure HJSI-II, LLC, the Mezzanine Lender became the sole member of Holdings.

### G.    Florida Foreclosure Action.

On August 8, 2012, Trimont, as Administrative Agent, commenced a foreclosure action in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (Case No.: 50 2012 CA 014613 XX XX MB AE, the "**Florida Foreclosure Action**") against the Operating Debtors for the benefit of the lenders under the ELP Credit Agreement seeking foreclosure of the real property and damages.

On May 1, 2013, Trimont filed a second amended complaint, which alleges causes of action for Foreclosure of Mortgage (Count I), Foreclosure of Security Interest (Count II), Breach of Promissory Note (Note A) (Count III), Breach of Amended and Restated Promissory Note (Note B-1) (Count IV), Breach of Amended and Restated Promissory Note (Note B-2) (Count V), Breach of Promissory Note (Note C) (Count VI) and Breach of Guaranty (Count VII).

In response, the Operating Debtors[2] filed their Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint and Counterclaims.  All previous lenders involved with the ELP Loan were named as counterclaim defendants, including, Trimont, Devonshire Funding Company, Inc., Redwood Capital Investments, LLC, Devonshire Campus, LLC, Capmark Bank, Capmark Finance, LLC, GE, S-Devonshire, LLC, S-1 Devonshire, LLC, and Landesband Baden-Württemberg.  At this time, the Florida Foreclosure Action is still pending.  On the Effective Date, the Debtors and ELP will seek dismissal of the Florida Foreclosure Action and all counterclaims.

### H.    UCC Auction of Mezzanine Interests.

Following the stated maturity date of the Mezzanine Credit Agreement, on or about May 9, 2012, HJSI Devonshire, LLC, as Administrative Agent under the Mezzanine Credit Agreement ("**HJSI**") sent notice of the default to Devonshire.  On or about July 29, 2013, HJSI-II, LLC sent notice to SHP and other parties of its intent to sell the Collateral owned by SHP, and pledged to HJSI-II, LLC to the highest qualified bidder through a public auction to be held on September 12, 2013 (the "**Auction**") in accordance with the Uniform Commercial Code.

Cain Brothers, a leading investment banking firm that focuses exclusively on the health care industry, directed the marketing process with respect to the Auction.  The process included, among other things, the publication of the notice of sale in both the Wall Street Journal (Florida edition) and the Palm Beach Post, as well as the preparation and circulation of a "teaser" regarding the Auction and the assets which were being sold, to over 55 potential strategic and qualified institutional investors.

A few days prior to the Auction, on, September 6, 2013, SHP filed a complaint in Connecticut Superior Court seeking to temporarily and permanently restrain HJSI and HJSI II, LLC from proceeding with the Auction (Docket. No. FBT-CV-13-6037755-S).  Following oral arguments, the court denied the temporary relief requested by SHP and allowed the Auction to proceed on September 12, 2013.

At the Auction HJSI, as Administrative Agent on behalf of HJSI-II, LLC credit bid in the amount of $17,125,000 and was the successful bidder at the Auction, as no other bids were submitted.  The principal of SHP, Craig Anderson, attended the Auction on behalf of SHP.  At the conclusion of the Auction, the HJSI requested that Mr. Anderson execute certain transfer documents as required under the SHP Pledge Agreement in order to effectuate the sale of the Collateral, including the 100% membership interests in Holdings, to HJSI.  Mr. Anderson refused to execute any such transfer documents.  As a result, HJSI, as attorney-in-fact for SHP, executed the necessary documents.

Subsequent to the Auction, HJSI transferred the Collateral purchased at the Auction to HJSI-II, LLC, which remains the holder of the 100% ownership interests in Holdings.  As of

---

[2] At the time the Answer was filed the Operating Debtors were controlled by SHP Senior Living Investments, LLC.

September 17, 2013, the amount of $3,171,158.87 remains outstanding under the Mezzanine Credit Agreement and those other certain instruments, documents and agreements executed in connection therewith.

## III.    EVENTS LEADING TO BANKRUPTCY

Following the 2008 economic downturn and corresponding real estate market decline, large numbers of homeowners were (and continue to be) unable to sell their homes without a substantial loss in value.    Seniors interested in moving to a continuing care retirement community typically sell their existing homes and use the positive equity to fund the required entrance deposit.  Furthermore, the decline in the financial markets has resulted in many seniors having substantially smaller retirement savings than they had originally anticipated.  The severe and protracted real estate market downturn resulted in a drastic and proportional decline in the ability of many communities, including the Facility, to sell units to prospective residents.  Accordingly, although the Facility is fully operational, the housing market has limited its ability to achieve a stabilized occupancy rate in the independent living sections of the Facility.  As occupancy is the foundation of the Facility's business, its inability to achieve stabilized occupancy eventually resulted in an inability to repay its obligations under the ELP Credit Agreement or Mezzanine Credit Agreement that became due on April 30, 2012.

As described above, due to Holdings' inability to repay its obligations under the Mezzanine Credit Agreement, HJSI-II, LLC foreclosed on and purchased 100% of the membership interests in Holdings that were pledged to it by SHP.  Thus, HJSI-II, LLC controls, directly and/or indirectly, each of the Debtors in these Chapter 11 Cases.

Accordingly, prior to filing these cases, HJSI-II, LLC, on behalf of each of the Debtors, engaged in extensive negotiations with ELP, the Operating Debtors' secured lender. Thereafter, the Debtors and ELP negotiated a restructuring of the Debtors secured and certain unsecured obligations, which is embodied in the Plan.  On September 17, 2013, the Debtors and ELP entered into a Restructuring, Lockup and Plan Support Agreement (the "**Lockup Agreement**") that provides for ELP to support the Debtors' proposed Plan.  Further, as part of the negotiation among the parties, and in order to facilitate the restructuring of the Debtors' indebtedness, ELP has agreed to contribute funds to be for Distributions under the Plan.

## IV.    EVENTS EXPECTED TO OCCUR DURING DEBTOR'S CHAPTER 11 CASES

### A.    Anticipated Events During the Chapter 11 Cases.

The Debtors do not expect the Chapter 11 Cases to be protracted.  To expedite their emergence from Chapter 11, the Debtors on or shortly after the Petition Date, in addition to filing this Disclosure Statement and the Plan, will file motions seeking the relief detailed below, among other relief, from the Court.  Such relief, if granted, will facilitate the administration of the Chapter 11 Cases; there can be no assurance, however, that the Court will grant the relief sought.

1.    **Motion For Authority To Pay Prepetition Employee Wages and Associated Benefits**

The Debtors' employees are an integral part of their business, and their continued dedication is crucial to the Debtors' success.  The Debtors believe that they have a valuable asset in their work force and that any delay in paying prepetition compensation or benefits to their employees would damage its relationships with employees and irreparably harm employee morale at a time when the continued dedication, confidence and cooperation of their employees is most critical.  The Debtors are grateful to their employees for their help, without which a restructuring would not be possible.  Accordingly, the Debtors are seeking authority to pay compensation and benefits in the Chapter 11 Cases which were accrued but unpaid as of the Petition Date and to continue its employee programs during the pendency of the Chapter 11 Cases.

2.    **Motions To Continue Using Existing Cash Management Systems**

Because the Debtors expect the Chapter 11 Cases to be pending for about sixty (60) days, and because of the administrative hardship that any operating changes would impose, the Debtors are seeking authority to continue using their existing cash management system, bank accounts and business forms and to follow its internal investment and deposit guidelines.  Absent the Court's authorization of the continued use of the cash management system, the Debtors' cash flow could be impaired to the detriment of the Debtors' Estates and creditors.

Continued use of its existing cash management system will facilitate the Debtors' orderly entry into Chapter 11 protection and will avoid many of the possible disruptions and distractions that could divert the Debtors' attention from more pressing matters during the initial days of these Chapter 11 Cases, particularly in light of the limited amount of time the Debtors expect to be under Chapter 11 protection.  As a result of set-up time and expenses, requiring the Debtors to adopt and implement a new cash management system would likely increase the costs of the Chapter 11 Cases.  For the same reasons, requiring the Debtors to close their existing bank accounts and establish new accounts or requiring it to create new business forms would only frustrate their efforts to reorganize expeditiously.

3.    **Motion to Escrow Entrance Fees for Protection of Residents and to Honor Refund Obligations**

In order to fully protect the Debtors' residents, the Debtors have filed a motion for an order authorizing the Debtors to escrow certain Entrance Fees received postpetition from residents of the Facility to ensure that the refunds of the residents' deposits will be secure during the Debtors' Chapter 11 Cases.  Prior to the Petition Date, the Debtors began depositing Entrance Fees into an escrow account held by the Florida Office of Insurance Regulation.  Following the Petition Date, the Debtors have sought Bankruptcy Court approval to continue to deposit Entrance Fees received into the existing escrow account until such time as the Debtors confirm a Chapter 11 plan and emerge from Chapter 11 protection.  The Debtors have also sought Bankruptcy Court approval to honor in the ordinary course of business refund obligations that may become due and owing during the pendency of these Chapter 11 Cases.

4.      **Motion To Approve the Use of Cash Collateral**

The Debtors need access to the cash collateral of ELP in order to operate their business during the Chapter 11 Cases.  As a consequence, the Debtors are seeking prompt Bankruptcy Court approval of the use of cash collateral to enable the Debtors to address their funding and other commitments and to otherwise maintain normal operations and strong relationships with their vendors, customers and suppliers during the Chapter 11 Cases.

5.      **Applications For Retention of the Debtors' Professionals**

The Debtors intend to seek retention of certain professionals to represent and assist them in connection with the Chapter 11 Cases.  These professionals were intimately involved with the negotiation and development of the restructuring transactions and the Plan.  These professionals include, among others, Young Conaway Stargatt & Taylor, LLP, as general bankruptcy counsel for the Debtors and Alvarez & Marsal as restructuring advisor to the Debtors.

6.      **Motion to Approve Debtors' Proposed Form Of Adequate Assurance Of Payment, Resolve Objections By Utility Companies and Prohibit Utilities From Altering, Refusing Or Discontinuing Service**

In order to fully protect the residents and to ensure a continuity of services, the Debtors have filed a motion for an order approving the proposed form of adequate assurance of payment to be provide to utility companies, resolving objections by utility companies and prohibiting utilities from altering, refusing or discontinuing service to the Facility.

7.      **Motion to Retain Epiq Bankruptcy Solutions, LLC as Claims Agent**

The Debtors intend to seek the employment of Epiq Bankruptcy Solutions, LLC ("**Epiq**") as claims noticing agent.  Epiq will provide efficient management of the claims and noticing processes in these cases, thereby allowing the Debtors management and advisors to focus on the Debtors' reorganization efforts for the benefit of the Debtors, their estate and their creditors.

8.      **Motion to Combine Disclosure Statement and Plan Confirmation Hearings**

The Debtors have negotiated the terms of the Plan with its only impaired creditors HJSI-II, LLC and ELP.  All other creditor classes are paid in full under the Plan.  Accordingly, in order to reduce the Debtors' time in chapter 11, the Debtor sought this Court's approval to combine the Disclosure Statement and Confirmation Hearings.

9.      **Adversary Proceeding to Turnover Books and Records and Provide Access to Operations**

Despite the fact that its interests were foreclosed on September 12, 2013, SHP Senior Living Investments, LLC, the former member of Holdings has refused to grant access to the books and records and operations of the Debtors.  Because SHP and its principals including CA Capital, LLC, an entity wholly owned by Craig Anderson, which formerly was the manager of

all the Debtors no longer had any authority to act on behalf of the Debtors, the Debtors were required to bring an adversary proceeding and seek injunctive relief.

### 10.    Motion to Reject Management Agreements

The Debtors filed a motion to reject the Service Agreements because the entities providing services under those agreements were wholly owned by Craig Anderson who no longer has an interest in the Debtors.

## V.    SUMMARY OF THE CHAPTER 11 PLAN OF REORGANIZATION FOR THE DEBTORS

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, TREATMENT AND IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT 1.**

### A.    Treatment of Claims and Interests Under the Plan.

The Plan, while prepared jointly, constitutes four (4) separate plans, one for Holdings, one for Devonshire, one for Chatsworth at PGA and one for Chatsworth Properties. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of certain unclassified Claims, along with Classes of Claims against and Interests in Devonshire, Chatsworth at PGA and Chatsworth Properties. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

| Classified Claims Against and Interests in Holdings | | | |
|---|---|---|---|
| **Class** | **Description** | **Treatment** | **Entitled to Vote** |
| 1A | Other Priority Claims | Unimpaired | No |
| 2A | HJSI-II, LLC Secured Claims | Impaired | Yes |
| 3A | Other Secured Claims | Unimpaired | No |
| 4A | General Unsecured Claims | Unimpaired | No |
| 5A | Interests in Holdings | Impaired | No (deemed to reject) |
| Classified Claims Against and Interests in Devonshire | | | |
| **Class** | **Description** | **Treatment** | **Entitled to Vote** |

| 1B | Other Priority Claims | Unimpaired | No (deemed to accept) |
|---|---|---|---|
| 2B | ELP Secured Claims | Impaired | Yes |
| 3B | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4B | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 5B | Interests in Devonshire | Unimpaired | No (deemed to accept) |

| Classified Claims Against and Interests in Chatsworth at PGA | | | |
|---|---|---|---|
| **Class** | **Description** | **Treatment** | **Entitled to Vote** |
| 1C | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2C | ELP Secured Claims | Impaired | Yes |
| 3C | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4C | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 5C | Interests in Chatsworth at PGA | Unimpaired | No (deemed to accept) |

| Classified Claims Against and Interests in Chatsworth Properties | | | |
|---|---|---|---|
| **Class** | **Description** | **Treatment** | **Entitled to Vote** |
| 1D | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2D | ELP Secured Claims | Impaired | Yes |
| 3D | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4D | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 5D | Interests in Chatsworth Properties | Unimpaired | No (deemed to accept) |

**B.      Treatment of Unclassified Claims Under the Plan.**

**1.      Administrative Expense Claims.**

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment with the applicable Debtor against whom such Claim is Allowed, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor shall be paid in full and performed by the applicable Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

**2.      Compensation and Reimbursement Claims.**

All Professionals seeking payment of Compensation and Reimbursement Claims (i) shall, (a) by no later than three (3) Business Days prior to the Plan Confirmation Date, provide the Plan Proponents with, a good faith estimate of their unpaid Compensation and Reimbursement Claims through the Plan Confirmation Date, and (b) by no later than three (3) Business Days after the Effective Date, provide the Plan Proponents with, a good faith estimate of their unpaid Compensation and Reimbursement Claims for the period from the Plan Confirmation Date through such anticipated Effective Date, (ii) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in these Chapter 11 Cases by the date that is thirty (30) days after the Effective Date, provided that the amounts sought in any such Professional's final application for unpaid Compensation and Reimbursement Claims or amounts otherwise approved by the Bankruptcy Court shall not exceed the amount of such Professional's good faith estimates provided to the Plan Proponents and filed with the Bankruptcy Court pursuant to clause (i) of Section 2.2 of the Plan, and (iii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (x) upon the later of (1) the Effective Date, (2) the date upon which the order relating to any such Allowed Compensation and Reimbursement Claim is entered, or (y) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Compensation and Reimbursement Claim and the Plan Proponents.

**3.      Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees with the Plan Proponents to a different treatment or has been paid by any applicable Debtor or ELP prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash over a period ending not later than five (5) years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim.  The Plan Proponents reserve the right to prepay at

any time under this option.  Any Claims asserted by a governmental unit on account of any penalties shall not be Priority Tax Claims.  On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

### C.    Treatment of Classified Claims and Interests Under the Plan.

### HOLDINGS PLAN

### 1.    Other Priority Claims (Class 1A)

Class 1A consists of all Other Priority Claims against Holdings.  Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1A is Unimpaired and is deemed to accept the Plan.

### 2.    HJSI-II, LLC Secured Claim (Class 2A)

Class 2A consists of all HJSI-II, LLC Secured Claims against Holdings, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in the Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for such Allowed HJSI-II, LLC Secured Claim HJSI-II, LLC shall receive the Mezz Payment.

### 3.    Other Secured Claims (Class 3A)

Class 3A consists of all Other Secured Claims against Holdings.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3A is Unimpaired and is deemed to accept the Plan.

### 4.    General Unsecured Claims (Class 4A)

Class 4A consists of all General Unsecured Claims against Holdings.  Each Holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the  option of ELP: (i) to the

- 17 -

extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4A is Unimpaired and is deemed to accept the Plan.

### 5.      Interests in Holdings (Class 5A):

Class 5A consists of all Interests in Holdings.  On the Effective Date, all Interests in Holdings shall be cancelled and extinguished.  One hundred percent (100%) of the Interests in Reorganized Holdings shall be issued to ELP or its designee.  Class 5A is impaired and is deemed to reject the Plan.

### DEVONSHIRE PLAN

### 1.      Other Priority Claims (Class 1B)

Class 1B consists of all Other Priority Claims against Devonshire.  Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1B is Unimpaired and is deemed to accept the Plan.

### 2.      ELP Secured Claims (Class 2B)

Class 2B consists of all ELP Secured Claims against Devonshire, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in the Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for such Allowed ELP Secured Claims, the Holder of the Allowed ELP Secured Claims (or its assignees or designees) shall receive 100% of the Interests in Reorganized Holdings.  Class 2B is impaired and is entitled to vote to accept or reject the Plan.

### 3.      Other Secured Claims(Class 3B)

Class 3B consists of all Other Secured Claims against Devonshire.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law

that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3B is Unimpaired and is deemed to accept the Plan.

### 4.      General Unsecured Claims (Class 4B):

Class 4B consists of all General Unsecured Claims against Devonshire.  Each Holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the  option of ELP: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4B is Unimpaired and is deemed to accept the Plan.

### 5.      Interests in Devonshire (Class 5B)

Class 5B consists of all Interests in Devonshire.  On the Effective Date, all Interests in Devonshire shall be reinstated and rendered Unimpaired in accordance with Section 1124 of the Bankruptcy Code.  Class 5B is Unimpaired and is deemed to accept the Plan.

## CHATSWORTH AT PGA PLAN.

### 1.      Other Priority Claims (Class 1C)

Class 1C consists of all Other Priority Claims against Chatsworth at PGA.  Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1C is Unimpaired and is deemed to accept the Plan.

### 2.      ELP Secured Claims (Class 2C)

Class 2C consists of all ELP Secured Claims against Chatsworth at PGA, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in the Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for

such Allowed ELP Secured Claims, the Holder of the Allowed ELP Secured Claims (or its assignees or designees) shall receive 100% of the Interests in Reorganized Holdings.  Class 2C is impaired and is entitled to vote to accept or reject the Plan.

### 3.        Other Secured Claims(Class 3C)

Class 3C consists of all Other Secured Claims against Chatsworth at PGA.   On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the  option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3C is Unimpaired and is deemed to accept the Plan.

### 4.        General Unsecured Claims (Class 4C)

Class 4C consists of all General Unsecured Claims against Chatsworth at PGA.   Each Holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the option of ELP: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4C is Unimpaired and is deemed to accept the Plan.

### 5.        Interests in Chatsworth at PGA (Class 5C):

Class 5C consists of all Interests in Chatsworth at PGA.  On the Effective Date, all Interests in Chatsworth at PGA shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  Class 5C is Unimpaired and is deemed to accept the Plan.

### CHATSWORTH PROPERTIES PLAN.

### 1.        Other Priority Claims (Class 1D)

Class 1D consists of all Other Priority Claims against Chatsworth Properties.  Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such

Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1D is Unimpaired and is deemed to accept the Plan.

### 2.    ELP Secured Claims (Class 2D):

Class 2D consists of all ELP Secured Claims against Chatsworth Properties, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in the Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for such Allowed ELP Secured Claims, the Holder of the Allowed ELP Secured Claims (or its assignees or designees) shall receive 100% of the Interests in Reorganized Holdings.  Class 2D is impaired and is entitled to vote to accept or reject the Plan.

### 3.    Other Secured Claims(Class 3D):

Class 3D consists of all Other Secured Claims against Chatsworth Properties.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3D is Unimpaired and is deemed to accept the Plan.

### 4.    General Unsecured Claims (Class 4D):

Class 4D consists of all General Unsecured Claims against Chatsworth Properties.  Each Holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the Debtors' option, in consultation with ELP: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4D is Unimpaired and is deemed to accept the Plan.

5.        **Interests in Chatsworth Properties (Class 5D)**:

Class 5D consists of all Interests in Chatsworth Properties.  On the Effective Date, all Interests in Chatsworth at PGA shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  Class 5D is Unimpaired and is deemed to accept the Plan

D.        **Acceptance or Rejection of the Plan**

Only Impaired Classes of Claims are entitled to vote to accept or reject the Plan.  Please refer to Section 4 of the Plan for estimated recoveries for each Impaired Class.

1.        **Impaired Classes.**

Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to the Plan may vote separately to accept or reject the Plan.  Each Holder of an Allowed Claim in such an Impaired Class shall receive a ballot and may cast a vote to accept or reject the Plan.  Class 5A is not entitled to receive or retain any property under the Plan and are, therefore, conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Classes 2A, 2B, 2C and 2D are Impaired and are the only Classes of Claims or Interests entitled to vote on the Plan.

2.        **Acceptance by a Class.**

A Class of Claims entitled to vote to accept or reject the Plan shall be deemed to accept the Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept the Plan.  A Class of Interests is deemed to accept the Plan if the Plan has been accepted by Holders of at least 2/3 of the amount of the Allowed Interests held by Holders of such Interests who vote in such Class.  Classes 1A, 3A, 4A, 1B, 3B, 4B, 5B, 1C, 3C, 4C, 5C, 1D, 3D, 4D and 5D are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

E.        **Means for Implementation of the Plan.**

1.        **Separate Plans.**

For purposes of voting on the Plan and receiving Distributions under the Plan, votes will be tabulated separately for each Debtor's Plan and Distributions will be made to each separate Class as provided in such Debtor's Plan, as set forth in Sections 3 and 4 of the Plan.  Except as otherwise provided in the Plan, Distributions in respect of Allowed Claims held against a particular Debtor shall be calculated based upon the value of the assets of that particular Debtor's Estate.  A Claim against multiple Debtors, to the extent Allowed against each respective Debtor, shall be treated as a separate Claim against each such Debtor for all purposes (including, but not limited to, voting and Distributions).

### 2. No Double Payment of Claims.

To the extent that a Claim is Allowed against more than one Debtor, there shall be only a single recovery on account of such Allowed Claim; *provided, however*, that the Holder of an Allowed Claim against more than one Debtor may recover distributions from all such co-obligor Debtors until such Holder has received payment in full on such Allowed Claim.  No holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim and such Claim shall be administered and treated in the manner provided by the Plan only until payment in full on such Allowed Claim.

### 3. Severability of Plans.

A failure to confirm any one or more of the Debtors' Plans shall not affect other Plans confirmed by the Bankruptcy Court; *provided, however*, that the Plan Proponents reserve the right to withdraw any and all Plans from confirmation if any one or more Plans is not confirmed.

### 4. Sources of Cash for Plan Distributions.

Except as otherwise provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be made from the then existing Cash balances in the Reorganized Debtors' unrestricted accounts; *provided, however*, that nothing herein shall be deemed to limit or prohibit the Reorganized Debtors from entering into one or more post-Effective Date credit facilities, to fund additional payments or liquidity requirements of the Reorganized Debtors.

### 5. New Property Management Agreements.

On the Effective Date, Reorganized Devonshire and Reorganized Chatsworth at PGA shall enter into new property management agreements with the New Property Manager.

### 6. Assumption of Residency Contracts.

The applicable Debtors shall assume all of the Residency Contracts in their entirety.

### 7. Corporate Existence.

Except as otherwise provided herein, in the LLC Governance Documents or the Plan Confirmation Order, the Debtors shall continue to exist as Reorganized Debtors after the Effective Date with all the powers of a limited liability company under the laws of their respective jurisdiction of organization and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

### 8.       Managers of Reorganized Debtors.

On the Effective Date, each Reorganized Debtor shall be managed by an entity designated by ELP, until its successor is duly appointed or until earlier removed or replaced in accordance with the LLC Governance Documents of such Reorganized Debtor.

### 9.       Officers of Reorganized Debtors.

On the Effective Date, the existing officers, including but not limited to the Chief Restructuring Officer, of the Debtors may be replaced or removed, in the discretion of the managers and/or member(s) of Reorganized Debtors in accordance with the applicable LLC Governance Documents.

### 10.      Vesting of Assets in the Reorganized Debtors.

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, or as soon as practicable thereafter, all property of the Debtors' Estates and all Causes of Action of the Debtors (except those released pursuant to the Section 11 of the Plan) shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 11.      Restructuring Transactions.

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Persons may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (3) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### 12.      Corporate Actions.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date).   All matters provided for in the Plan involving the corporate structure of the Debtors or the

Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors or Reorganized Debtors, as the case may be, or notice to, order of, or hearing before, the Bankruptcy Court.

On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtors or the Reorganized Debtors, as the case may be, and any and all other agreements, documents, securities and instruments relating to the foregoing.

### 13. Transfer Tax Exemption.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any stamp tax or other similar tax in the United States, and the Plan Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized under the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under the Plan.

### 14. Cancellation of Agreement, Notes and Interests.

On the Effective Date, except to the extent otherwise expressly provided herein, all notes, stock, interests, instruments, certificates, and other documents evidencing any Claims and Interests in any of the Debtors, other than a Claim or Interest that is Unimpaired under the Plan, shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder. On the Effective Date, except to the extent otherwise expressly provided herein, any indenture or other agreement relating to any of the foregoing shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder.

### 15. Non-Voting Equity Securities.

The LLC Governance Documents of each of the Reorganized Debtors shall provide, to the extent not already included in such LLC Governance Documents, that the Reorganized

Debtors shall not issue any non-voting equity securities to the extent required by Bankruptcy Code section 1123(a)(6).

### 16.    Change in Control.

The Consummation of the Plan shall not constitute a change in ownership or change in control under any employee benefit plan or program, executory contract, lease or agreement in existence on the Effective Date to which any Debtor is a party.

### 17.    Preservation of Causes of Action of the Debtors.

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, the releases contained in Section 11 of the Plan), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' right to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which the Debtors or the Reorganized Debtors have released any Person or Person on or before the Effective Date (including pursuant to Section 11 of the Plan or otherwise), the Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserves all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or consummation of the Plan. Notwithstanding the foregoing, the Debtors shall be deemed to have released any claims, causes of action or rights arising under sections 510(c), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

### F.    Distributions Under the Plan.

### 1.    Date of Distributions.

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is reasonably practicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  The Distributions shall be made to the holders of Allowed Claims as of the Distribution Record Date and the Debtors and the

Reorganized Debtors shall have no obligation to recognize any transfer of a Claim or Interest occurring after the Distribution Record Date. Changes as to the Holder of a Claim or Interest after the Distribution Record date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Debtors or Reorganized Debtors (as applicable) and their counsel.

### 2.    Disbursing Agent.

Any Distributions to be made after the Effective Date hereunder shall be made by Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security in connection with the making of any such Distributions and shall be authorized and directed to rely upon the Debtors' books and records and the Debtors' representatives and professionals in determining Claims not entitled to a Distribution under the Plan in accordance with the terms of the Plan.

### 3.    Powers of Disbursing Agent.

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of the Plan, (ii) make any Distributions contemplated hereby, and (iii) perform such other acts as it deems necessary to make such Distributions pursuant to the Plan.

### 4.    Delivery of Distributions.

If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the correct current address of such Holder, but no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined to the best of its ability the current address of such Holder, at which time a Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to the applicable Reorganized Debtor, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 5.    Manner of Payment.

At the option of the Plan Proponents, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 6.    Setoffs.

The Plan Proponents, on behalf of the Debtors, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of

such Allowed Claim or Interest), any claims of any nature whatsoever that the Debtors may have against the Holder of such Allowed Claim or Interest, *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtors or Plan Proponents of any such claim the Debtors may have against the Holder of such Claim or Interest.

### 7.    Distributions After Effective Date.

For Disputed Claims that have not been Allowed as of the Effective Date, any Distributions made after the Effective Date to Holders of such Disputed Claims (which later become Allowed Claims after the Effective Date) shall be deemed to have been made on the Effective Date.

### 8.    No Postpetiton Interest.

Unless otherwise specifically provided for herein or in the Plan Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date.

### 9.    Distributions Free and Clear.

Except as may be otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

### 10.    Fractional Dollars; De Minimis Distributions.

Notwithstanding any other provision of the Plan, Cash payments of fractions of dollars shall not be made. Whenever any Distribution to a holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down. The Disbursing Agent shall not be required to make any Cash payment of less than one hundred dollars ($100.00) with respect to any Claim unless a request therefor is made in writing to such Disbursing Agent; provided, however, that the Disbursing Agent shall have no obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim is equal to or greater than ten dollars ($10.00).

### 11.    Prepayment.

Except as otherwise provided in the Plan or the Plan Confirmation Order, Reorganized Debtors shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

### G.      Procedures for Disputed Claims.

#### 1.      Allowance of Claims and Interests.

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Plan Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Plan Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.

#### 2.      Objections to Claims.

The Debtors, Reorganized Debtors and ELP shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests under the Plan or otherwise.  Any objections to Claims shall be served and filed on or before the later of (i) the Claims Objection Deadline or (ii) such later date as may be fixed by the Bankruptcy Court.  If an objection has not been filed to a Claim or the Schedules have not been amended with respect to a Claim that (a) was scheduled by the Debtors but (b) was not scheduled as contingent, unliquidated, and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

#### 3.      Estimation of Claims.

Before or after the Effective Date, the Plan Proponents may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Proponents may pursue supplementary proceedings to object to the allowance of such Claim.

#### 4.      Distributions Relating to Disputed Claims.

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim, such Holder's *pro rata* portion of the property distributable with respect to the Class in which such Claim belongs.  To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the Holders of Allowed Claims in the same Class.

**5.      Distributions after Allowance.**

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

**6.      Rights to Settle Claims.**

On and after the Effective Date, ELP shall have the sole authority to settle or otherwise resolve any objections to Claims and to compromise, settle, or otherwise resolve any Disputed Claims without further review or approval of the Bankruptcy Court.

**H.      Executory Contracts and Unexpired Leases.**

**1.      Assumption and Rejection of Contracts and Leases.**

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, except (i) all Residency Contracts, which shall be assumed by the applicable Debtor, (ii) contracts or leases that were previously assumed or rejected by the Debtors, (iii) contracts or leases that are the subject of a motion to assume filed by the Debtors on or before the Confirmation Date, or (iv) contracts or leases set forth in schedule 1 hereto as an executory contract or unexpired lease to be assumed.  The Plan Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

**2.      Inclusiveness.**

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such

executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

### 3.        Payments Related to Assumption of Contracts and Leases.

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder are in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof.  If there is a dispute regarding (i) the nature or amount of any Cure; (ii) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption and assignment.

### 4.        Rejection Damages Claims.

All Rejection Damages Claims must be served upon the applicable Debtor and its counsel within thirty (30) days after the earlier of (i) the date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Plan Confirmation Date; provided, however, that any such Rejection Damages Claim arising out of the rejection of an executory contract or unexpired lease that is filed after the Effective Date shall be served on the Reorganized Debtors.  Any Rejection Damages Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates and their property.

### 5.        Insurance Policies.

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and such Insurance Policies shall continue in effect after the Effective Date.  Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies.

### 6.        Contracts and Leases Entered Into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any executory contracts and unexpired leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed executory contracts and unexpired leases) will survive and remain unaffected by entry of the Plan Confirmation Order.

### I.        Conditions Precedent to Confirmation and Effective Date.

### 1.        Conditions to Confirmation of Plan.

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

(a)    An order, in form and substance satisfactory to the Plan Proponents, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered;

(b)    The proposed Plan Confirmation Order shall be in form and substance satisfactory in all respects to the Plan Proponents; and

(c)    All provisions, terms and conditions hereof are approved in the Plan Confirmation Order.

**2.    Conditions Precedent to Effective Date of the Plan.**

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)    the Plan Confirmation Order, in form and substance satisfactory in all respects to the Plan Proponents, shall have been entered by the Bankruptcy Court and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto; and

(b)    all other actions, documents, and agreements necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

**3.    Waiver of Conditions.**

Unless otherwise specifically provided in the Plan, the conditions set forth in Sections 10.1 and 10.2 of the Plan may be waived in whole or in part by the Plan Proponents without notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or ELP regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**4.    Effect of Failure of Conditions.**

If the conditions precedent specified in Sections 10.1 and 10.2 of the Plan have not been satisfied or waived by the Plan Proponents within sixty (60) days after the Plan Confirmation Date, which period may be extended by the Plan Proponents in their sole discretion, then (i) the Plan Confirmation Order shall be vacated, (ii) no Distributions under the Plan shall be made, (iii) the Debtors and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date never occurred, and (iv) all of the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in

any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors or otherwise.

### J.    Settlement, Release, Injunction And Related Provisions.

#### 1.    Binding Effect.

On the Plan Confirmation Date, the Plan shall be binding upon the Debtors and all present and former Holders of Claims against and Interests in any Debtor, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject the Plan.

#### 2.    Compromise and Settlement of Claims, Interests and Controversies.

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.  In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to, action by, or order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against it and Causes of Action against other Persons.

#### 3.    Claims Against Guarantors.

For the avoidance of doubt, and notwithstanding anything to the contrary contained herein, ELP shall retain and be entitled to enforce any right, claim, or cause of action it may have against Craig E. Anderson pursuant to the Anderson Guaranty.

#### 4.    Discharge.

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective

Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

### 5.  Injunction.

**Except as otherwise expressly provided in the Plan, the Plan Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Interests in any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest, and (c) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and causes of action which are retained pursuant to the Plan.**

**All Persons shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity for any kind or nature that occurred before the Effective Date.**

### 6.  Term of Injunctions or Stays.

Unless otherwise provided in the Plan or Plan Confirmation Order, all injunctions or stays pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Cases, or otherwise, and in existence on the Plan Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of the Plan or the Plan Confirmation Order, as applicable.

### 7.  Injunction Against Interference with Plan.

Upon the Bankruptcy Court's entry of the Plan Confirmation Order, all Holders of Claims and Interests, the Debtors, and other parties in interest, along with their respective present

or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Plan Proponents' and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of the Plan.

8.     **Debtor Releases.**

ON THE EFFECTIVE DATE, THE DEBTORS AND THEIR RELATED PERSONS SHALL RELEASE AND BE PERMANENTLY ENJOINED FROM ANY PROSECUTION OR ATTEMPTED PROSECUTION OF ANY AND ALL CLAIMS EXCEPT FOR CLAIMS ARISING FROM GROSS NEGLIGENCE OR WILFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND CAUSES OF ACTION THAT CONSTITUTE PROPERTY OF ANY DEBTOR'S ESTATE, INCLUDING THE AVOIDANCE ACTIONS, THAT THEY HAVE OR MAY HAVE AGAINST ANY OF THE THIRD PARTY RELEASEES, AND ALL OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES AND THEIR RESPECTIVE PROPERTY IN CONNECTION WITH (I) THE ELP LOAN DOCUMENTS OR ACTIONS TAKEN IN CONNECTION THEREWITH, (II) THE DEBTORS, AND (III) THE CHAPTER 11 CASES.

ON THE EFFECTIVE DATE, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE PLAN CONFIRMATION ORDER, THE THIRD PARTY RELEASEES, AND ALL OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES AND THEIR RESPECTIVE PROPERTY SHALL BE RELEASED FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, AVOIDANCE ACTIONS AND LIABILITIES IN EACH CASE THAT CONSTITUTE PROPERTY OF ANY DEBTOR'S ESTATE THAT THE DEBTORS OR THEIR RELATED PERSONS MAY BE ENTITLED TO ASSERT, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR THEREAFTER ARISING, BASED IN WHOLE OR IN PART UPON ANY, ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO, THE NEGOTIATION, SOLICITATION, CONFIRMATION AND CONSUMMATION OF THE PLAN.

THIS RELEASE AND THE EXCULPATION SET FORTH IN SECTION 11.9 BELOW ARE INTEGRAL PARTS OF THE PLAN.  ELP IS AGREEING TO PAY THE MEZZ PAYMENT, PURSUANT TO THE PLAN AND FOR THE BENEFIT OF THE DEBTORS' ESTATES, BUT IS ONLY WILLING TO DO SO IF IT RECEIVES ASSURANCE THAT IT WILL NOT BE SUBJECT TO POTENTIAL LITIGATION.

9.      **Exculpation.**

**None of the Debtors, HJSI-II, LLC or ELP, nor any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns shall have or incur any liability to any holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, for any act or omission in connection with, related to, or arising out of, in whole or in part, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan, including without limitation, the negotiation and solicitation of the Plan, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the Third Party Releasees and each of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

**This exculpation and the release set forth in Section 11.8 of the Plan are integral parts of the Plan.  ELP is agreeing to pay the Mezz Payment, pursuant to the Plan and for the benefit of the Debtors' Estates, but is only willing to do so if it receives assurance that it will not be subject to potential litigation.**

10.      **Third Party Releases.**

On the Effective Date, except as otherwise provided herein and except for the right to enforce the Plan, all Persons who have voted to accept the Plan or who are entitled, directly or indirectly, to receive a distribution hereunder, shall be deemed to forever release, waive and discharge the Debtors, the Reorganized Debtors, any Committe appointed in the Chapter 11 Cases, HJSI-II, LLC, ELP, the Administrative Agent, the members of the Debtors, the Debtors' manager(s), and each of their respective constituents, principals, officers, directors, employees, agents, representatives, attorneys, professionals, advisors, affiliates, funds, successors, predecessors, and assigns of any from any and all Liens, Claims, Causes of Action, liabilities, encumbrances, security interests, Interests or charges of any nature or description whatsoever relating to the Debtors, the Chapter 11 Cases or affecting property of the Debtors' Estates, whether known or unknown, discovered or undiscovered, scheduled or unscheduled, contingent, fixed, unliquidated or disputed, matured or unmatured, contingent or noncontingent, senior or subordinated, whether assertable directly or derivatively by, through, or related to the Debtors, against successors or assigns of the Debtors and the individuals and entities listed above whether at law, in equity or otherwise, based upon any condition, event, act, omission occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way or arising out of, in whole or in part, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan, including without limitation, the negotiation and solicitation of the Plan, all regardless of whether (a) a Proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest in Allowed or (c) the holder of such Claim or Equity Interest has voted to accept or reject the Plan, except for willful misconduct or gross negligence.

11.     **Release of Liens.**

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## K.     Retention of Jurisdiction.

Notwithstanding entry of the Plan Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Plan Confirmation Date;

(c)     to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)     to enter, implement, or enforce such orders as may be appropriate in the event the Plan Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Plan Confirmation Order, or any other order of the Bankruptcy Court;

(g)     to hear and determine any application to modify the Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Plan Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Plan Confirmation Date;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(k)    to hear any disputes arising out of arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(l)    to determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

(m)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(o)    to enter a final decree closing the Chapter 11 Cases.

## L.    Miscellaneous Provisions of the Plan.

### 1.    Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executory, administrator, successor or assign of that Person.

### 2.    Payment of Statutory Fees.

All fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtors.  All such fees that become due and payable thereafter by a Debtor shall be paid by the respective Reorganized Debtor.  The Reorganized Debtors shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees.  The Reorganized Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Reorganized Debtors.

### 3.     Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

### 4.     Amendments.

#### a.     Modifications to Plan.

The Plan or any Exhibits thereto may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Plan Confirmation Date, the Plan Proponents may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Plan Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

#### b.     Other Amendments.

The Plan Proponents may make appropriate technical adjustments and modifications to the Plan prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 5.     Effectuating Documents and Further Transactions.

Each of the officers of the Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable members, to, and shall upon the request of the Debtors, execute, deliver, file, or record such contracts, instruments, certificates, deeds, bills of sale, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 6.     Revocation or Withdrawal of the Plan.

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans.  If the Plan Proponents revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation or Consummation of the Plan as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by such Debtors or any other Person.

### 7.    Severability.

If, prior to the entry of the Plan Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Plan Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 8.    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

### 9.    Time.

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by the Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

### 10.    Entire Agreement.

On the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 11.    Section 1125(c) Good Faith Compliance.

The Plan Proponents, and each of their Related Persons, shall be deemed to have acted in good faith under section 1125(c) of the Bankruptcy Code.

### 12.    Solicitation.

As of and subject to the occurrence of the Plan Confirmation Date, the Plan Proponents shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (c) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

*Effective Notice.*

All notices to or requests of the Plan Proponents by parties in interest in connection with the Plan shall be in writing and delivered either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery, all charges prepaid, and shall be deemed to have been given when received by:

1.  The Debtors:

        Devonshire at PGA National, LLC
        c/o HJSI Devonshire II, LLC, Manager
        2150 Post Road, Suite 301
        Fairfield, CT  06824
        Attn:   R. Jeffrey Sands
        Telephone: (203) 418-9002

        - with a copy to –

        M. Blake Cleary, Esq.
        Young Conaway Stargatt & Taylor, LLP
        Rodney Square
        1000 North King Street
        Wilmington, DE 19801
        Email: mbcleary@ycst.com
        Telephone:  (302) 571-6714

2.  ELP:

        ELP West Palm, LLC
        Gerald F. Doherty
        Senior Vice President & General Counsel
        Erickson Living Properties, LLC
        701 Maiden Choice Lane
        Baltimore, MD 21228
        Email: Gerald.Doherty@erickson.com
        Telephone: (410) 402-2350

        -with a copy to-

        DLA Piper LLP US
        1251 Avenue of the Americas
        New York, New York  10020
        Attn:   Thomas R. Califano, Esq.
            Gabriella L. Zborovsky, Esq.
        Telephone:     (212) 335-4500

-and-

DLA Piper LLP (US)
919 North Market Street, Suite 1500
Wilmington, DE, 19801
Attn:   R. Craig Martin, Esq.
Telephone:     (302) 468-5700


## VI.    RISKS AND CONSIDERATIONS

### A.    Bankruptcy Considerations.

Although the Plan Proponents believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent set forth in Section 10 of the Plan, and there can be no assurance that such conditions will be satisfied or waived.  In the event the conditions precedent described in Section 10 of the Plan have not been satisfied or waived (to the extent possible) by the Plan Proponents (as provided for in the Plan) within sixty (60) days after the Plan Confirmation Date, which period may be extended by the Plan Proponents in their sole discretion, then the Plan Confirmation Order will be vacated, no Distributions will be made pursuant to the Plan, and the Debtors and all Holders of Claims and Interests will be restored to the *status quo ante* as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date had never occurred.

The Plan provides for no Distribution to certain Classes as specified in Section 4 of the Plan.  The Bankruptcy Code conclusively deems these Classes to have rejected the Plan. Pursuant to section 1129(a)(10) of the Bankruptcy Code, notwithstanding the fact that these Classes are deemed to have rejected the Plan, the Bankruptcy Court may confirm the Plan if at least one Impaired Class votes to accept the Plan (with such acceptance being determined without including the vote of any "insider" in such class).  Classes 2A, 2B, 2C and 2D are the only Impaired Classes entitled to vote on the Plan, and ELP and HJSI-II, LLC are the only creditors in those Classes, and they intend to vote in favor of the Plan.  Therefore, the Plan will satisfy the requirements of section 1129(a)(10) of the Bankruptcy Code.  As to each Impaired Class that has not accepted the Plan, the Plan may be confirmed if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to these Classes.  The Plan Proponents believe that the Plan satisfies these requirements.

### B.    No Duty to Update Disclosures.

The Plan Proponents have no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Plan Proponents

are required to do pursuant to an order of the Bankruptcy Court. Delivery of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

### C.    Representations Outside this Disclosure Statement.

This Disclosure Statement contains representations concerning or related to the Debtors, the Plan Proponents, and the Plan that are authorized by the Bankruptcy Code and the Bankruptcy Court. Please be advised, that any representations or inducements outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by Holders of Claims that are entitled to vote to accept or reject the Plan.

### D.    No Admission.

The information and representations contained herein shall not be construed to constitute an admission of, or be deemed evidence of, any legal effect of the Plan on the Debtors or Holders of Claims and Interests.

### E.    Tax and Other Related Considerations.

The content of this Disclosure Statement is not intended and should not be construed as tax, legal, business or other professional advice. Holders of Claims and/or Interests should seek advice from their own independent tax, legal or other professional advisors based on their own individual circumstances.

### F.    Environmental.

The Debtors are not aware of any environmental condition at any of their properties that they consider material. However, it is possible that the environmental investigations of their properties might not have revealed all potential environmental liabilities or might have underestimated certain potential environmental issues. It is also possible that future environmental laws and regulations, or new interpretations of existing environmental laws, will impose material environmental liabilities on the Reorganized Debtors, or that current environmental conditions of properties that the Debtors own or operate will be adversely affected by hazardous substances associated with other nearby properties or the actions of unrelated third parties. The cost to defend any future environmental claims, perform any future environmental remediation, satisfy any environmental liabilities, or respond to changed environmental conditions could have a material adverse effect on the Reorganized Debtors' financial condition and operating results.

## VII.   PLAN CONFIRMATION AND CONSUMMATION

### A.    Plan Confirmation Hearing.

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a Plan. On, or as promptly as practicable after the filing of the Plan and this Disclosure Statement, the Plan Proponents will request pursuant to the

requirements of the Bankruptcy Code and the Bankruptcy Rules, that the Bankruptcy Court schedule the Plan Confirmation Hearing.  Notice of the Plan Confirmation Hearing will be provided to all known creditors, equity holders or their representatives.  The Plan Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Plan Confirmation Hearing or any subsequent adjourned Plan Confirmation Hearing.

Pursuant to Bankruptcy Code section 1128(b), any party in interest may object to confirmation of a plan of reorganization.  Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the particular Debtor or Debtors, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to Chambers, together with proof of service thereof, and served upon:  (i) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: M. Blake Cleary, Esq.), attorneys for the Debtors; (ii) DLA Piper LLP (US), 919 North Market Street, Suite 1500, Wilmington, DE, 19801 (Attn: R. Craig Martin) and DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Thomas R. Califano, Esq. and Gabriella L. Zborovsky, Esq.), attorneys for the ELP; (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; and (iii) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan.  **UNLESS AN OBJECTION TO CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO CONFIRM THE PLAN.**

### B.    Plan Confirmation Requirements Under the Bankruptcy Code.

At the Plan Confirmation Hearing, the Bankruptcy Court will consider the terms of the Plan and determine whether the Plan terms satisfy the requirements set out in section 1129 of the Bankruptcy Code.

### C.    Plan Consummation.

Upon confirmation of the Plan by the Bankruptcy Court, the Plan will be deemed consummated on the Effective Date.  Distributions to Holders of Claims receiving a Distribution pursuant to the terms of the Plan will follow consummation of the Plan.

### D.    Best Interests of Creditors Test.

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that such a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of liquidating the Debtors' Estates would include the expenses incurred during the bankruptcy cases and allowed by the Bankruptcy Court in the chapter 7 case, such as reimbursable compensation for the Debtors' professionals.

The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards pre-chapter 11 priority and unsecured claims. The Plan Proponents believe that in a chapter 7 liquidation case, no prepetition claims or interests, including claims of priority creditors, would receive any distribution of property from the Estates, and the Estates would likely not be able to pay most, if any, administrative expenses. Accordingly, the Plan Proponents believe that the Plan, which provides for payment in full to administrative and priority claimants, is in the best interest of creditors.

### E.    Liquidation Analysis.

With respect to each Impaired Class of Claims and Interests, confirmation of the Plan requires that each holder of a Claim or Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. To calculate the probable distribution to holders of each Impaired Class of Claims and Interests if the Debtors were liquidated under Chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtors' assets if its Chapter 11 Cases were converted to Chapter 7 cases under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the Debtors' assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of their collateral, and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the Chapter 7 cases and the Chapter 11 Cases. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as of counsel and other professionals retained, asset disposition expenses, all unpaid expenses incurred by the Debtors in their Chapter 11 Cases (such as compensation of attorneys, financial advisors and accountants) that are allowed in the Chapter 7 case, litigation costs, and claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases. The liquidation itself could trigger certain Priority Tax and Other Priority Claims (collectively, "**Priority Claims**") that otherwise would be due in the ordinary course of business. Those Priority Claims would be paid in full from the liquidation proceeds before the balance would be made available to pay General Unsecured Claims or to make any distribution in respect of equity interests. The liquidation would also prompt the rejection of most, if not all, of the Debtors' executory contracts and unexpired leases, thereby creating a significant increase in General Unsecured Claims.

The Plan Proponents believe that the Plan meets the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code. The Plan Proponents believe that the members of

Impaired Classes 2A, 5A, 2B, 2C and 2D will receive more under the Plan than they would receive in a liquidation.  Prior to the Hearing on Confirmation the Debtors will submit a liquidation analysis prepared by their financial advisors which establish that in a chapter 7 liquidation unsecured and administrative creditors would receive no distribution.  The Debtors' financial advisors estimate the liquidation value of the Debtors' assets to be $54 million and the "as is" valuation to be $80 million. The Liquidation Analysis for a potential Chapter 7 liquidation scenario is attached hereto as Exhibit 2.

Although the Plan Proponents believe that the Plan meets the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will determine that the Plan meets this test.

### F.      Feasibility.

The Bankruptcy Code requires that the Bankruptcy Court determine that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors.  For purposes of showing that the Plan meets this feasibility standard, the Debtors have analyzed the ability of the Reorganized Debtors to meet its obligations under the Plan and retain sufficient liquidity and capital resources to conduct its business.

Following the Effective Date, the Reorganized Debtors will not have any secured debt. Furthermore, at emergence the Reorganized Debtors will have access to Cash in the amount of approximately $5,000,000, plus additional statutory reserves in the approximate amount of $14,000,000 (which will remain unrestricted and will not be used to make Distributions under the Plan).

### G.      Acceptance by Impaired Classes.

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in below, each class of claims or equity interests that is impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.  As a general matter under the Bankruptcy Code, a class is "impaired," unless the plan:  (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such claim or equity interest; or (c) provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled to any fixed price at which the debtor may redeem the security.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan.  Thus, a class of claims will have voted to accept the plan only if two-thirds (2/3) in amount and a majority in number actually voting cast their ballots in favor of acceptance.  A vote may be disregarded if the Bankruptcy Court determines, after

notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

The Claims in Classes 1A, 3A, 4A, 1B, 3B, 4B, 6B, 1C, 3C, 4C, 6C, 1D, 3D, 4D and 6D are not Impaired under the Plan and, as a result, the Holders of such Claims are deemed to have accepted the Plan.  Any Class of Claims that is not occupied as of the commencement of the Plan Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If no votes to accept or reject the Plan are received with respect to a Class whose votes have been solicited under the Plan (other than a Class that is deemed eliminated under the Plan), such Class shall be deemed to have voted to accept the Plan.

**H.      Section 1129(b).**

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm a plan even if a class of impaired claims or interests votes to reject the plan if the plan does not unfairly discriminate and is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

**1.      No Unfair Discrimination.**

The "no unfair discrimination" test requires that the plan not provide for unfair treatment with respect to classes of claims or interests that are of equal priority, but are receiving different treatment under the plan.

**2.      Fair and Equitable.**

The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured.  The plan satisfies the fair and equitable requirement if no class of claims receives more than 100% of the allowed amount of the claims in such class.  Further, if a class of claims is considered a dissenting class ("**Dissenting Class**"), *i.e.*, a Class of Claims that is deemed to reject the Plan because the required majorities in amount and number of votes is not received from the Class, the following requirements apply:

**a.      Class of Secured Claims:**

Each holder of an impaired secured claim either (i) retains its liens on the subject property, to the extent of the allowed amount of its secured claim and receives deferred cash payments having a value, as of the effective date of the plan of at least the allowed amount of such claim, (ii) has the right to credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof) or (iii) receives the "indubitable equivalent" of its allowed secured claim.

b. **Class of Unsecured Creditors:**

Either (i) each holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the Dissenting Class will not receive any property under the plan.

c. **Class of Interests:**

Either (i) each interest holder will receive or retain under the plan property of a value equal to the greater of (a) the fixed liquidation preference or redemption price, if any, of such stock and (b) the value of the stock, or (ii) the holders of interests that are junior to the interests of the Dissenting Class will not receive any property under the plan.

The Plan Proponents believe the Plan does not "discriminate unfairly" and will satisfy the "fair and equitable" requirement notwithstanding that certain Classes of Claims are deemed to reject the Plan because no Class that is junior to such Class will receive or retain any property on account of the Claims and Interests in such Class and the Plan not provide for unfair treatment with respect to Classes of Claims or Interests that are of equal priority.

## VIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Plan Proponents believe the Plan is in the best interests of creditors and should accordingly be accepted and confirmed.  If the Plan as proposed, however, is not confirmed, the following alternatives may be available:  (i) a liquidation of the Debtors' assets pursuant to chapter 7 of the Bankruptcy Code; (ii) an alternative plan of reorganization may be proposed and confirmed; or (iii) the Debtors' Chapter 11 Cases may be dismissed.

### A. Chapter 7 Liquidation.

If a plan pursuant to chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Chapter 11 Cases may be converted to liquidation cases under chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code.  A discussion of the effect that a chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth in Article VII hereof.  The Plan Proponents believe that such a liquidation would result in smaller distributions being made to the Debtors' creditors than those provided for in the Plan (with Holders of Allowed Administrative, Priority Tax, Other Priority and General Unsecured Claims likely receiving no distribution) because (a) the value of the Debtors' assets that would be liquidated is substantially less than the value of the ELP Secured Claim in favor of ELP and the HJSI-II, LLC Secured Claim in favor of HJSI-II, LLC and (b) additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals.  In a chapter 7 liquidation, the Plan Proponents believe that there would be no Distribution to Holders of Allowed Claims other than to ELP in partial satisfaction of its claims.

**B.** **Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code.**

If the Plan is not confirmed, the Debtors or any party in interest may propose a different plan.  Such a plan might involve either an alternative reorganization structure or an orderly liquidation of the Debtors' assets in a chapter 11 bankruptcy proceeding.  The Plan Proponents believe that the terms of the Plan result in the realization of the most value for Holders of Claims and Interests against the Debtors' Estates.  If the Debtors' assets were to be liquidated in the Chapter 11 Cases, the proceeds of such liquidation would be applied towards the senior secured claims of ELP, leaving no prospect of recovery for other Holders of Allowed Claims.  Based on the estimated value of the Debtors' assets, all of which are subject to ELP's secured claim, ELP's unsecured deficiency claim would dwarf all other claims in these cases.  Accordingly, the Debtors would not be able to confirm a plan of reorganization absent ELP's consent.

**C.** **Dismissal of the Debtors' Chapter 11 Cases.**

Dismissal of all of the Debtors' Chapter 11 Cases would have the effect of restoring (or attempting to restore) all parties to the *status quo ante*.  Upon dismissal of all of the Debtors' Chapter 11 Cases, the Debtors would lose the protection of the Bankruptcy Code, and ELP would proceed with the state court Florida Foreclosure Action to foreclose upon the assets that are subject to its Liens that constitute all or substantially all of the Operating Debtors' assets.  Dismissal will also permit unpaid unsecured creditors to obtain and enforce judgments against the Debtors.  The Plan Proponents believe that these actions would eliminate any chance of recovery for Holders of Allowed Administrative, Priority Tax, Other Priority and General Unsecured Claims.  Therefore, the Plan Proponents believe that dismissal of the Debtors' Chapter 11 Cases is not a preferable alternative to the Plan.

**IX.** **CERTAIN FEDERAL TAX CONSEQUENCES**

This Disclosure Statement does not discuss any federal income tax consequences of the Plan to Creditors.  Accordingly, Creditors should consult their own tax advisors regarding their ability to recognize a loss for tax purposes and any other tax consequences to them of the Plan.

**DUE TO A LACK OF DEFINITIVE JUDICIAL OR ADMINISTRATIVE AUTHORITY AND INTERPRETATION, SUBSTANTIAL UNCERTAINTIES EXIST WITH RESPECT TO VARIOUS TAX CONSEQUENCES OF THE PLAN.  FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO SPECIFIC TAX CONSEQUENCES (FEDERAL, STATE AND LOCAL) OF THE PLAN.**

## X.    RECOMMENDATION AND CONCLUSION

The Plan Proponents believe the Plan is in the best interests of the Estates and urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their ballots.

Dated:  September 19, 2013
Wilmington, Delaware

Respectfully submitted,

**DEVONSHIRE PGA HOLDINGS, LLC, a**
**Delaware limited liability company**
**(for itself and on behalf of each Debtor)**

By:   _____
Name:   Paul Rundell
Title:   Chief Restructuring Officer

**ELP WEST PALM, LLC, a Maryland limited**
**liability company**
By:  Erickson Living Properties, LLC, its sole member

By:   _____
Name:   Gerald F. Doherty
Title:   Senior Vice President and General Counsel