# EXHIBIT 1

**Blackline Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------x
                                        :
In re:                                  :   Chapter 11
                                        :
DEVONSHIRE PGA HOLDINGS, LLC,           :   Case No. 13-12460 (————)
et al.,¹                                :
                                        :   (Joint Administration PendingCSS)
Debtors.                                :
----------------------------------------------------------x   (Jointly Administered)
```

**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**DEVONSHIRE PGA HOLDINGS, LLC AND ITS SUBSIDIARIES**

Co-Proposed by the Debtors and the Debtors' Secured Lender ELP West Palm, LLC

| | |
|---|---|
| M. Blake Cleary, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone:  (302) 571-6714<br>Fax: (302) 576-3287<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* | R. Craig Martin<br>DLA Piper LLP (US)<br>9191201 North Market Street, Suite 15002100<br>Wilmington, DE, 19801<br>Tel:    (302) 468-5700<br>Fax:    (302) 394-2341<br><br>-and-<br><br>Thomas R. Califano<br>Gabriella L. Zborovsky<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas, 27th Floor<br>New York, NY 10020<br>Tel:    (212) 335-4500<br>Fax:    (212) 335-4501<br><br>*Counsel to ELP West Palm, LLC, the Secured Lender* |

Dated**:**  September 19,October 15, 2013
Wilmington, Delaware

---

¹       The Debtors in these chapter 11 cases, along with the last four (4) digits of their taxpayer identification numbers, are: Devonshire PGA Holdings, LLC (2843), Devonshire at PGA National, LLC (2904), Chatsworth at PGA National, LLC (3412) and Chatsworth PGA Properties, LLC (3472).  The mailing address of each of the Debtors, solely for purposes of notices and communications, is 350100 Devonshire Way, Palm Beach GardenGardens, FL 33418.

# TABLE OF CONTENTS

**Page**

SECTION 1.    DEFINITIONS AND INTERPRETATION .................................................. 1

    A.    Definitions. ................................................................................................ 1

    B.    Interpretation:  Application of Definitions and Rules of Construction 9 ............ 10

SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS .................... 10

    2.1    Administrative Expense Claims. ........................................................... 10

    2.2    Compensation and Reimbursement Claims 10 ..................................... 11

    2.3    Priority Tax Claims 10 ........................................................................... 11

SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS ........................... 11 12

    A.    Separate Plans ................................................................................... 11 12

    B.    Classified Claims Against and Interests in Holdings ......................... 11 12

    C.    Classified Claims Against and Interests in Devonshire ..................... 11 12

    D.    Classified Claims Against and Interests in Chatsworth at PGA .................... 12 13

    E.    Classified Claims Against and Interests in Chatsworth Properties ................. 12 13

SECTION 4.    TREATMENT OF CLAIMS AND INTERESTS ................................... 12 13

    4.1    Holdings Plan .................................................................................... 12 13

    4.2    Devonshire Plan ................................................................................ 13 14

    4.3    Chatsworth at PGA Plan. ........................................................................ 15

    4.4    Chatsworth Properties Plan 16 ......................................................... 17

SECTION 5.    ACCEPTANCE OR REJECTION OF THE PLAN ................................ 17 18

    5.1    Impaired Classes 17 .......................................................................... 18

    5.2    Acceptance by a Class 17. ................................................................ 18

SECTION 6.    MEANS FOR IMPLEMENTATION .................................................... 17 18

    6.1    Separate Plans 17 .............................................................................. 18

    6.2    No Double Payment of Claims 17 .................................................... 18

    6.3    Severability of Plans 18 .................................................................... 19

    6.4    Sources of Cash for Plan Distributions 18 ....................................... 19

    6.5    New Property Management Agreements 18 ...................................... 19

    6.6    Assumption of Residency Contracts 18 ........................................... 19

    6.7    Corporate Existence 18 ..................................................................... 19

    6.8    Managers of Reorganized Debtors 18 .............................................. 19

**TABLE OF CONTENTS**
(continued)

**Page**

| | | | |
|---|---|---|---|
| 6.9 | Officers of Reorganized Debtors, | ........................................................... | 19 |
| 6.10 | Vesting of Assets in the Reorganized Debtors 19 | ................................. | 20 |
| 6.11 | Restructuring Transactions 19 | ................................. | 20 |
| 6.12 | Corporate Actions 19 | ................................. | 20 |
| 6.13 | Transfer Tax Exemption 20 | ................................. | 21 |
| 6.14 | Cancellation of Agreement, Notes and Interests 20 | ................................. | 21 |
| 6.15 | Non-Voting Equity Securities 20 | ................................. | 21 |
| 6.16 | Change in Control 20 | ................................. | 21 |
| 6.17 | Preservation of Causes of Action of the Debtors 21 | ................................. | 22 |

SECTION 7.      DISTRIBUTIONS ...................................................... 21 22

| | | | |
|---|---|---|---|
| 7.1 | Date of Distributions 21 | ................................. | 22 |
| 7.2 | Disbursing Agent, | ........................................................... | 22 |
| 7.3 | Powers of Disbursing Agent 22 | ................................. | 23 |
| 7.4 | Delivery of Distributions 22 | ................................. | 23 |
| 7.5 | Manner of Payment 22 | ................................. | 23 |
| 7.6 | Setoffs 22 | ................................. | 23 |
| 7.7 | Distributions After Effective Date, | ........................................................... | 23 |
| 7.8 | No Postpetiton Interest 23 | ................................. | 24 |
| 7.9 | Distributions Free and Clear 23 | ................................. | 24 |
| 7.10 | Fractional Dollars; De Minimis Distributions 23 | ................................. | 24 |
| 7.11 | Prepayment 23 | ................................. | 24 |

SECTION 8.      PROCEDURES FOR DISPUTED CLAIMS ........................................... 23 24

| | | | |
|---|---|---|---|
| 8.1 | Allowance of Claims and Interests 23 | ................................. | 24 |
| 8.2 | Objections to Claims, | ........................................................... | 24 |
| 8.3 | Estimation of Claims 24 | ................................. | 25 |
| 8.4 | Distributions Relating to Disputed Claims 24 | ................................. | 25 |
| 8.5 | Distributions after Allowance 24 | ................................. | 25 |
| 8.6 | Rights to Settle Claims, | ........................................................... | 25 |

SECTION 9.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................... 25

| | | | |
|---|---|---|---|
| 9.1 | Assumption and Rejection of Contracts and Leases, | ................................. | 25 |

# TABLE OF CONTENTS
(continued)

**Page**

9.2    Inclusiveness 25 ................................................................................ 26

9.3    Payments Related to Assumption of Contracts and Leases 25 ............... 26

9.4    Objections to Assumption/Cure Amounts. ................................. 27

9.5    Rejection Damages Claims 26 .......................................................... 27

9.5 9.6  Insurance Policies 26 ..................................................................... 27

9.6 9.7  Contracts and Leases Entered Into After the Petition Date 26 ............... 28

SECTION 10.    CONDITIONS PRECEDENT TO CONFIRMATION AND
EFFECTIVE DATE ...................................................................... 26 28

10.1    Conditions to Confirmation of Plan 26 ............................................. 28

10.2    Conditions Precedent to Effective Date of the Plan 27 ....................... 28

10.3    Waiver of Conditions 27 ................................................................. 28

10.4    Effect of Failure of Conditions 27 ................................................... 29

SECTION 11.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED
PROVISIONS .......................................................................... 27 29

11.1    Binding Effect 27 .......................................................................... 29

11.2    Compromise and Settlement of Claims, Interests and Controversies
28 ............................................................................................... 29

11.3    Claims Against Guarantors .......................................... 28 11.4 Discharge 28. ___

11.5 11.4 ............................................................................... Injunction 29. 30

11.6 11.5 ............................................................. Term of Injunctions or Stays 29. 30

11.7 11.6 .......................................... Injunction Against Interference with Plan 29. 31

11.8 11.7 .......................................................................... Debtor Releases 29. 31

11.9 11.8 ................................................................................ Exculpation 30. 32

11.10 11.9 ...................................................................... Third Party Releases 31. 32

11.11 11.10    Release of Liens 31 ................................................................ 33

SECTION 12.    RETENTION OF JURISDICTION ....................................... 31 33

SECTION 13.    MISCELLANEOUS PROVISIONS ...................................... 33 34

13.1    Successors and Assigns .................................................................. 33 34

13.2    Payment of Statutory Fees 33 ......................................................... 34

13.3    Substantial Consummation 33 ....................................................... 35

13.4    Amendments 33 ............................................................................ 35

## TABLE OF CONTENTS
(continued)

**Page**

13.5    Effectuating Documents and Further Transactions ~~34~~ .............................. 35

13.6    Revocation or Withdrawal of the Plan ~~34~~ ................................................. 35

13.7    Severability ~~34~~ ....................................................................................... 36

13.8    Governing Law ~~34~~ .................................................................................. 36

13.9    Time ~~35~~ .................................................................................................. 36

13.10   Entire Agreement ~~35~~ ............................................................................. 36

13.11   Section 1125(c) Good Faith Compliance ~~35~~ ........................................... 36

13.12   Solicitation ~~35~~ ....................................................................................... 36

13.13   Effective Notice ~~36~~ ............................................................................... 37

## INTRODUCTION

Devonshire PGA Holdings, LLC ("Holdings"), Devonshire at PGA National, LLC ("Devonshire"), Chatsworth at PGA National, LLC ("Chatsworth at PGA"), Chatsworth PGA Properties, LLC ("Chatsworth Properties" and together with Holdings, Devonshire, Chatsworth at PGA, the "Debtors"), and ELP West Palm, LLC, the Debtors' senior secured lender ("ELP" and together with the Debtors, the "Plan Proponents"), jointly propose the following joint chapter 11 plan of reorganization under chapter 11 of the Bankruptcy Code (as defined below).

All holders of Claims and Interests who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entireties before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties, and operations, a summary and analysis of the Plan, and certain related matters, including the settlements embodied in the Plan and the risk factors relating to the consummation of the Plan.

## SECTION 1.    DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms used herein shall have the respective meanings defined below:

**1.1    *Administrative Agent*** means TriMont Real Estate Advisors, Inc., as administrative agent with respect to the ELP Loan Documents, together with any successor thereto.

**1.2    *Administrative Expense Claim*** means any Allowed Claim pursuant to Bankruptcy Code sections 503(b), 507(a)(2) and 507(a)(1b) arising from actual, necessary costs or expenses of administration of the Chapter 11 Cases and preservation of the Debtors' Estates.

**1.3    *Allowed*** means, with reference to any Claim against the Debtors, a Claim (i) as to which no objection or request for estimation has been filed on or before any deadline therefor set by the Bankruptcy Court or the expiration of such other applicable period fixed by the Bankruptcy Court or this Plan; (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order or in accordance with this Plan; or (iii) that is allowed (a) by a Final Order, (b) by an agreement between the Holder of such Claim and the Debtors or (c) pursuant to the terms of this Plan; *provided, however*, that, notwithstanding anything herein to the contrary, by treating a Claim as "Allowed" under clause (i) above (the expiration of the applicable deadline), the Debtors do not waive their rights to contest the amount and validity of any disputed, contingent and/or unliquidated Claim in the time, manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced. An Allowed Claim (i) includes a Disputed Claim to the extent such Disputed Claim becomes Allowed after the Effective Date and (ii) shall be net of any valid setoff exercised with respect to such Claim pursuant to the provisions of the Bankruptcy Code and applicable law. Moreover, any portion of a Claim that is satisfied, released, or waived during the Case is not an Allowed Claim. Unless

otherwise specified in this Plan, in section 506(b) of the Bankruptcy Code or by Final Order of the Bankruptcy Court, "Allowed" Claims shall not, for purposes of Distributions under this Plan, include interest on such Claim accruing from and after the Petition Date.

**1.4** *Anderson ~~Guaranty~~* ~~means that certain Guaranty of Non-Recourse Carveouts Agreement dated May 1, 2007 by Craig E. Anderson for the benefit of Merrill Lynch in connection with the ELP Credit Agreement, as ultimately assigned to ELP.~~ means Craig E. Anderson.

**1.5** *Anderson Parties* means Anderson, CAC, SHP Investments, SHP Services, SHP Healthcare and SHP Employment.

**1.6** *Anderson Settlement* means that certain agreement dated September 20, 2013, by and among Anderson, CAC, SHP Investments, SHP Services, SHP Healthcare, SHP Employment on the one hand and Redwood, ELP, HJSI, HJSI-II, LLC, DPGA, Holdings, Devonshire, Chatsworth at PGA and Chatsworth Properties.

**1.7** *Anderson Settlement Payment* means the amount of Three Million Dollars ($3,000,000.00) to be paid by ELP to Anderson in full and complete satisfaction of any and all claims, including, but not limited to, the SHP Rejection Damages Claims, which any of the Anderson Parties may have.

**1.8** *Assumption Notice* has the meaning set forth in Section 9.1.

**1.9** ~~1.5~~ *Avoidance Actions* means causes of action arising under Bankruptcy Code ~~section~~sections 502, 510, 541, 544, 545, 547 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

**1.10** ~~1.6~~ *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*

**1.11** ~~1.7~~ *Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware.

**1.12** ~~1.8~~ *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court applicable to the Chapter 11 Cases.

**1.13** ~~1.9~~ *Business Day* means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

**1.14** *CAC* means CA Capital, LLC a Delaware limited liability company.

**1.15** ~~1.10~~ *Cash* means legal tender of the United States of America.

**1.16** ~~1.11~~ *Causes of Action* means, subject to the releases, exculpations, and injunctions set forth in this Plan, any and all claims, causes of action and enforceable rights of a

Person against third parties, or assertable by a Person or on behalf of its creditors, its estate, or itself, whether brought in the Bankruptcy Court or any other forum for recovery or avoidance, that has not been settled or resolved as of the Effective Date, of, among other things: (a) obligations, transfers of property or interests in property, offsets, debt forgiveness, Cash, and other types or kinds of property or interests in property or the value thereof, recoverable or avoidable pursuant to Chapter 5 of the Bankruptcy Code or other sections of the Bankruptcy Code or any applicable law; (b) damages, general or statutory or exemplary (or all) or other relief, including but not limited to actions relating to or based upon – (i) indebtedness owing to a Person, (ii) fraud, negligence, gross negligence, willful injury or misconduct, acts or malice, or any other tort actions, including but not limited to defamation, malicious prosecution, or tortious interference with contract, (iii) breaches of contract, (iv) violations of federal or state securities laws, (v) violations of applicable corporate, limited liability company or partnership laws, (vi) breaches of fiduciary or agency duties, including, but not limited to, the duties of care and/or loyalty, (vii) recharacterization, (viii) illegal dividends, (ix) misrepresentations, (x) causes of action based on disregard of the corporate form or piercing the corporate veil or other liability theories, (xi) corporate waste, (xii) corporate opportunity, (xiii) any theory of recovery against a lending institution not otherwise released by the Plan, including any action or any action causing harm to a Person, (xiv) equitable or legal subordination, (xv) indemnity rights against third parties, or (xvi) any other action listed in Bankruptcy Rule 7001; and (c) damages or other relief based upon any other claim of a Person to the extent not specifically compromised or released pursuant to the Plan.

**1.17** ~~1.12~~ *Chapter 11 Case(s)* means (a) when used with reference to a particular Debtor, the case under Chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

**1.18** ~~1.13~~ *Chatsworth at PGA* means Chatsworth at PGA National, LLC, the lessee and licensed operator of the Health Center.

**1.19** ~~1.14~~ *Chatsworth Properties* means Chatsworth PGA Properties, LLC, the owner and lessor of the Health Center real estate.

**1.20** ~~1.15~~ *Claim* means a "claim," as that term is described in Bankruptcy Code section 101(5), against any Debtor.

**1.21** ~~1.16~~ *~~Claim~~Claims Objection Deadline* means such date or other period of limitation, if any, as ~~may~~my be specifically fixed by an order of the Bankruptcy Court for objecting to Claims.

**1.22** ~~1.17~~ *Class* means any group of Claims or Interests classified in Section 3 of this Plan pursuant to Bankruptcy Code section 1122.

**1.23** ~~1.18~~ *Collateral* means any property or interest in property of the Estates subject to a lien or security interest to secure the payment or performance of a Claim, which lien or security interest is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.24**    ~~1.19~~ *Compensation and Reimbursement Claim* means a Claim for compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to Bankruptcy Code sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5), including, but not limited to, Claims of any Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

**1.25**    ~~1.20~~ *Consummation or Consummate* means the occurrence of or to achieve the Effective Date.

**1.26**    ~~1.21~~ *Contingent Claim* means any contingent or unliquidated Claim asserted or which may be asserted against any Debtor.

**1.27**    ~~1.22~~ *Cure* means the payment of Cash by the Debtors or Reorganized Debtors, as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

**1.28**    *DPGA means DPGA Management LLC, a Delaware limited liability company.*

**1.29**    ~~1.23~~ *Debtor(s)* means any of Holdings, Devonshire, Chatsworth at PGA and Chatsworth Properties.

**1.30**    ~~1.24~~ *Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to Bankruptcy Code sections 1101, 1107(a) and 1108.

**1.31**    ~~1.25~~ *Devonshire* means Devonshire at PGA National, LLC, the owner and licensed operator of the Independent Living Facility.

**1.32**    ~~1.26~~ *Disbursing Agent* means the Reorganized Debtors or any ~~part~~party designated by the Reorganized Debtors in their sole discretion.

**1.33**    ~~1.27~~ *Disclosure Statement* means that certain disclosure statement relating to this Plan as amended or modified from time to time, including, among other things, any and all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125.

**1.34**    ~~1.28~~ *Disputed Claim* means a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (a) if no Proof of Claim has been filed by the applicable deadline:  (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (b) if a Proof of Claim or other request for payment has been filed by the applicable deadline:  (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed in this Plan; (ii) a Claim for

which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim or as asserted in the Proof of Claim varies from the nature and amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors or any other party in interest which has not been withdrawn or determined by a Final Order.

**1.35**    1.29 *Distribution* means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

**1.36**    1.30 *Distribution Record Date* means five (5) Business Days prior to the Plan Confirmation Date.

**1.37**    1.31 *ELP* means ELP West Palm, LLC, a Maryland limited liability company or its assigns and designees.

**1.38**    1.32 *ELP Credit Agreement* means that certain Credit and Security Agreement dated as of May 1, 2007 among Devonshire, Chatsworth at PGA and Chatsworth Properties, as Borrowers, Merrill Lynch, as Administrative Agent, Syndication Agent and as a Lender, and the additional Lender parties thereto, as subsequently assigned to ELP.

**1.39**    *ELP Deficiency Claim* means the unsecured Claim granted by section 506 of the Bankruptcy Code to ELP in the amount of, and to the extent that, the total ELP Claim exceeds the value of the collateral which secures ELP's Claim.

**1.40**    1.33 *ELP Loan Documents* means the ELP Mortgage and Assignment of Leases and Rents, the ELP Notes, the ELP Credit Agreement, and any related documents and agreements.

**1.41**    1.34 *ELP Mortgage and Assignment of Leases and Rents* means that certain Mortgage Assignment of Leases and Rents, Security Agreement and Fixture Filing made by Devonshire and Chatsworth Properties for the benefit of Merrill Lynch Capital dated May 1, 2007 (and subsequently assigned to ELP) which secures, among other things, the Debtors' obligations under the ELP Notes.

**1.42**    1.35 *ELP Notes* means, collectively, that certain Promissory Note (Note A), dated as of May 1, 2007, made by the Borrowers in the original principal amount of $75,000,000, that certain Amended and Restated Term Note (Note B-1) dated as of July 25, 2007, made by the Borrowers in the original principal amount of Twenty Million Dollars ($20,000,000), that certain Amended and Restated Term Note (Note B-2) dated as of July __, 2007 (sic), made by the Borrowers in the original principal amount of Twenty Million Dollars ($20,000,000) and that certain Term Note (Note C) dated as of May 1, 2007, made by the Borrowers in the original principal amount of Forty Million Two Hundred Twenty Thousand Dollars ($40,220,000) (as each was subsequently assigned to ELP).

**1.43**    1.36 *ELP Secured Claims* means the secured claims Secured Claims of ELP against the Debtors pursuant to the ELP Loan Documents in the aggregate amount, as of the

Petition Date, of $177,343,555.90, plus any additional fees, expenses, and interest that may be owing to ELP.  All ELP Secured Claims are deemed Allowed pursuant to Section 4 of this Plan.

**1.44**  ~~1.37~~ ***Effective Date*** means the first Business Day after the Plan Confirmation Date on which the conditions precedent specified herein have been either satisfied or waived.

**1.45**  ~~1.38~~ ***Effective Date Notice*** means a notice, to be filed with the Bankruptcy Court by the Debtors by the date that is no later than seven (7) Business Days after the Effective Date occurs, setting forth the occurrence of the Effective Date.

**1.46**  ~~1.39~~ ***Entity*** means an entity as defined in section 101(15) of the Bankruptcy Code.

**1.47**  ~~1.40~~ ***Estate(s)*** means, individually, the estate of Holdings, Devonshire, Chatsworth at PGA or Chatsworth Properties and, collectively, the estates of all of the Debtors created under Bankruptcy Code section 541.

**1.48**  ~~1.41~~ ***Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**1.49**  ~~1.42~~ ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, may be filed relating to such order shall not cause such order to not be a Final Order.

**1.50**  ~~1.43~~ ***General Unsecured Claim*** means any Claim asserted against any Debtor which is not included within the other specifically defined Classes under this Plan or which is otherwise determined by the Bankruptcy Court to be a general unsecured claim, including, but not limited to, a Rejection Damages Claim.

**1.51**  ~~1.44~~ ***Health Center*** means that certain building located at 347 Hiatt Drive, Palm Beach Gardens, Florida and which contains 22 assisted living units, 20 Alzheimer's Care units, as well as 76 skilled nursing beds and is commonly referred to as "Chatsworth at PGA National."

**1.52**  ***HJSI*** means HJSI Investments LLC, a Connecticut limited liability company.

**1.53** ~~1.45~~ *HJSI-II, LLC* means HJSI Devonshire II, LLC, the Connecticut limited liability company which is the holder of a Secured Claim against, and the Interests in, Holdings.

**1.54** ~~1.46~~ *HJSI-II, LLC Secured Claim* means the ~~claim~~Claim against Holdings pursuant to the Mezzanine Loan Documents in the amount of $20,156,718 as of September 11, 2013.

**1.55** ~~1.47~~ *Holder* means the legal or beneficial holder of a Claim or Interest.

**1.56** ~~1.48~~ *Holdings* means Devonshire PGA Holdings, LLC, the sole member of Devonshire.

**1.57** ~~1.49~~ *Impaired* means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of Bankruptcy Code section 1124.

**1.58** ~~1.50~~ *Independent Living Facility* means those certain buildings located at ~~350~~100 Devonshire Way, Palm Beach Gardens, Florida comprised of three residential towers and a clubhouse and which contains approximately 327 independent living units and is commonly referred to as "Devonshire at PGA National."

**1.59** ~~1.51~~ *Insurance Policies* means, collectively, all of the insurance policies issued to one or more of the Debtors, including, but not limited to, D&O liability insurance policies, automobile liability policies, workers' compensation policies and general liability policies.

**1.60** ~~1.52~~ *Interest* means membership interest in any of the Debtors.

**1.61** ~~1.53~~ *LLC Governance Documents* means, collectively, the certificate of formation, limited liability company agreement and other limited liability company organization documents of the Debtors and the Reorganized Debtors.

**1.62** ~~1.54~~ *Lien* means a lien as defined in section 101(37) of the Bankruptcy Code.

**1.63** ~~1.55~~ *Local Bankruptcy Rules* means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.64** ~~1.56~~ *Merrill Lynch* means Merrill Lynch Capital, a division of Merrill Lynch Business Financial Services Inc.

**1.65** ~~1.57~~ *Mezz Payment* means the payment in the aggregate total amount of ~~$3,000,000~~Three Million Dollars ($3,000,000.00) to be made to HJSI-II, LLC on the Effective Date.

**1.66** ~~1.58~~ *Mezzanine Loan Documents* means that certain Mezzanine Credit and Security Agreement dated as of May 1, 2007 by and among Holdings and HJSI Devonshire, LLC, as successor Administrative Agent thereunder, and related agreements.

**1.67**  **1.59** *New Property Manager* means Erickson Living Management, LLC, a Maryland limited liability company.

**1.60**  *Operating Debtors* means Devonshire, Chatsworth at PGA and Chatsworth Properties.

**1.68**  **1.61** *Other Priority Claim* means any Claim entitled to priority pursuant to Bankruptcy Code section 507(a) other than an Administrative Expense Claim, Compensation and Reimbursement Claim, or Priority Tax Claim.

**1.69**  **1.62** *Other Secured Claim* means any Secured Claim against any of the Debtors, other than aan ELP Secured Claim or HJSI-II, LLC Secured Claim, that is junior in priority to either the ELP Secured Claims or HJSI-II, LLC Secured Claims.

**1.70**  **1.63** *Person* means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof or any other Entity.

**1.71**  **1.64** *Petition Date* means September 19, 2013, the date on which the Debtors' chapter 11 bankruptcy petitions were filed with the Bankruptcy Court.

**1.72**  **1.65** *Plan* means this plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be, and any exhibits and schedules hereto.

**1.73**  **1.66** *Plan Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Plan Confirmation Order.

**1.74**  **1.67** *Plan Confirmation Hearing* means the hearing to be held by the Bankruptcy Court to consider approval of the Plan, as such hearing may be adjourned or continued from time to time.

**1.75**  **1.68** *Plan Confirmation Order* means an order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**1.76**  **1.69** *Plan Documents* means all documents, forms of documents, schedules, and exhibits to the Plan to be executed, delivered, assumed and/or performed in conjunction with consummation of the Plan on the Effective Date.

**1.77**  **1.70** *Plan Proponents* means the Debtors together with ELP.

**1.78**  **1.71** *Plan Support Agreement* means that certain agreement dated September 17, 2013 by and among the Debtors and ELP.

**1.79**  **1.72** *Plan Supplement* means those documents effecting the transaction under this Plan to be filed with the Bankruptcy Court five (5) business days prior to the Plan Confirmation Hearing.

01:14226851.114

-8-

**1.80** ~~1.73~~ *Priority Tax Claim* means any Allowed Claim of a governmental unit pursuant to Bankruptcy Code sections 502(i) and 507(a)(8); *provided, however,* that any Claims for penalties asserted by governmental units shall not be Priority Tax Claims.

**1.81** ~~1.74~~ *Professional* means any professional firm or professional Person retained by the Debtors in connection with these Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.82** ~~1.75~~ *Proof of Claim or Interest* means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001 describing the basis and amount of a Claim or Interest, together with supporting documentation evidencing such Claim or Interest, which complies with applicable provisions of the Plan, the Bankruptcy Code, other Bankruptcy Rules, and any orders of the Bankruptcy Court.

~~**1.76** *Property* means, collectively, that certain real property and improvements located at 350 Devonshire Way, Palm Beach Gardens, Florida, knows as "Devonshire at PGA National" and that certain real property and improvements located at 347 Hiatt Drive, Palm Beach Gardens, Florida, known as "Chatsworth at PGA National".~~

**1.83** *Redwood* means Redwood Capital Investments LLC, a Maryland limited liability company.

**1.84** ~~1.77~~ *Rejection Damages Claims* means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to section 365(a) of the Bankruptcy Code by any of the Debtors, as limited, in the case of a rejected employment contract or unexpired lease, by section 502 of the Bankruptcy Code.

**1.85** ~~1.78~~ *Related Persons* means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, certificate holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity on or any time after the Petition Date, any Person claiming by or through any of them.

**1.86** ~~1.79~~ *Reorganized* means, with respect to any of the Debtors, any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

**1.87** ~~1.80~~ *Residency Contract* means each type of residency contract entered into by and between a current or past resident and the Debtors whereby, *inter alia*, such resident agrees to pay to the respective Debtor a residence deposit (if applicable) and a related monthly service fee.

**1.88** ~~1.81~~ *Schedules* means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors pursuant to Bankruptcy Code section 521, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such

schedules and statements have been or may be supplemented or amended from time to time through the Plan Confirmation Date.

**1.89** ~~1.82~~ *Secured Claim* means a Claim (i) secured by a valid and perfected Lien on collateral that is enforceable pursuant to applicable law, the amount of which is equal to or less than the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the Holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with Bankruptcy Code section 506(a), or (ii) secured by the amount of any rights of setoff of the Holder thereof under Bankruptcy Code section 553.

**1.90** *SHP Employment* means SHP Employment Services, LLP, a Delaware limited liability company.

**1.91** *SHP Healthcare* means SHP Healthcare Services, LLC, a Delaware limited liability company.

**1.92** *SHP Investments* means SHP Senior Living Investments, LLC a Delaware limited liability company.

**1.93** *SHP Rejection Damage Claim* means any and all of the claims of SHP Services, SHP Healthcare and SHP Employment arising by operation of section 365 of the Bankruptcy Code or otherwise by reason of the rejection of any and all of their respective agreements with any of the Debtors.

**1.94** *SHP Services* means SHP Senior Living Services, LLC, a Delaware limited liability company.

**1.95** ~~1.83~~ *Third Party Releasees* means HJSI, HJSI-II, LLC, ELP, the Administrative Agent, and each of their respective Related Persons.

**1.96** ~~1.84~~ *Unimpaired* means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code section 1124.

### B.    Interpretation:  Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein but not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Plan.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payments or other Distribution under this Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term

regardless of how the term is stated and each stated pronoun is gender neutral. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. When used herein with respect to the structure, governance or organizational matters of a limited liability company, the term "corporate" shall be deemed to mean "limited liability company".

## SECTION 2.    ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

### 2.1    *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment with the applicable Debtor against whom such Claim is Allowed, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor shall be paid in full and performed by the applicable Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

### 2.2    *Compensation and Reimbursement Claims.*

All Professionals seeking payment of Compensation and Reimbursement Claims (i) shall, (a) by no later than three (3) Business Days prior to the Plan Confirmation Date, provide the Plan Proponents with, a good faith estimate of their unpaid Compensation and Reimbursement Claims through the Plan Confirmation Date, and (b) by no later than three (3) Business Days after the Effective Date, provide the Plan Proponents with, a good faith estimate of their unpaid Compensation and Reimbursement Claims for the period from the Plan Confirmation Date through such anticipated Effective Date, (ii) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred in these Chapter 11 Cases by the date that is thirty (30) days after the Effective Date, *provided* that the amounts sought in any such Professional's final application for unpaid Compensation and Reimbursement Claims or amounts otherwise approved by the Bankruptcy Court shall not exceed the amount of such Professional's good faith estimates provided to the Plan Proponents and filed with the Bankruptcy Court pursuant to clause (i) of this Section 2.2, and (iii) shall be paid in full in such amounts as are Allowed by the Bankruptcy Court (x) upon the later of (1) the Effective Date, (2) the date upon which the order relating to any such Allowed Compensation and Reimbursement Claim is entered, or (y) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Compensation and Reimbursement Claim and the Plan Proponents.

### 2.3    *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees with the Plan Proponents to a different treatment or has been paid by any applicable Debtor or ELP prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim

shall receive on account of such Claim, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, regular installment payments in Cash over a period ending not later than five (5) years after the Petition Date of a total value, as of the Effective Date, equal to the Allowed amount of such Priority Tax Claim.  The Plan Proponents reserve the right to prepay at any time under this option.  Any Claims asserted by a governmental unit on account of any penalties shall not be Priority Tax Claims.  On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

**SECTION 3.        CLASSIFICATION OF CLAIMS AND INTERESTS**

    **A.        Separate Plans**

This Plan, while prepared jointly, constitutes four (4) separate plans, one for Holdings, one for Devonshire, one for Chatsworth at PGA and one for Chatsworth Properties.  Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of certain unclassified Claims, along with Classes of Claims against and Interests in Holdings, Devonshire, Chatsworth at PGA and Chatsworth Properties.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

    **B.        Classified Claims Against and Interests in Holdings**

| Class | Description | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1A | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2A | HJSI-II, LLC Secured Claims | Impaired | Yes |
| 3A | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4A | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 5A | Interests in Holdings | Impaired | No (deemed to reject) |

    **C.        Classified Claims Against and Interests in Devonshire**

| Class | Description | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1B | Other Priority Claims | Unimpaired | No (deemed to accept) |

| 2B | ELP Secured Claims | Impaired | Yes |
| 3B | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4B | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 5B | Interests in Devonshire | Unimpaired | No (deemed to accept) |

**D.    Classified Claims Against and Interests in Chatsworth at PGA**

| Class | Description | Treatment | Entitled to Vote |
|---|---|---|---|
| 1C | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2C | ELP Secured Claims | Impaired | Yes |
| 3C | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4C | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 5C | Interests in Chatsworth at PGA | Unimpaired | No (deemed to accept) |

**E.    Classified Claims Against and Interests in Chatsworth Properties**

| Class | Description | Treatment | Entitled to Vote |
|---|---|---|---|
| 1D | Other Priority Claims | Unimpaired | No (deemed to accept) |
| 2D | ELP Secured Claims | Impaired | Yes |
| 3D | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4D | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 5D | Interests in Chatsworth Properties | Unimpaired | No (deemed to accept) |

**SECTION 4.         TREATMENT OF CLAIMS AND INTERESTS**

### 4.1    *Holdings Plan*

      *4.1.1*    <u>Other Priority Claims (Class 1A)</u>:  Class 1A consists of all Other Priority Claims against Holdings.  Except to the extent that a Holder of an Allowed Other Priority

Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1A is Unimpaired and is deemed to accept the Plan.

        *4.1.2*   <u>HJSI-II, LLC Secured Claim (Class 2A)</u>:  Class 2A consists of all HJSI-II, LLC Secured Claims against Holdings, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for such Allowed HJSI-II, LLC Secured Claim HJSI-II, LLC shall receive the Mezz Payment.

        *4.1.3*   <u>Other Secured Claims (Class 3A)</u>:  Class 3A consists of all Other Secured Claims against Holdings.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3A is Unimpaired and is deemed to accept the Plan.

        *4.1.4*   <u>General Unsecured Claims (Class 4A)</u>:  Class 4A consists of all General Unsecured Claims against Holdings.  Each Holder of an Allowed General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the  option of ELP: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4A is Unimpaired and is deemed to accept the Plan.

01:14226851.114

     *4.1.5*   <u>Interests in Holdings (Class 5A)</u>:  Class 5A consists of all Interests in Holdings.  On the Effective Date, all Interests in Holdings shall be cancelled and extinguished.  One hundred percent (100%) of the Interests in Reorganized Holdings shall be issued to ELP or its designee <u>in exchange for its funding of the Mezz Payment</u>.  Class 5A is impaired and is deemed to reject the Plan.

    **4.2**   ***Devonshire Plan***

     *4.2.1*   <u>Other Priority Claims (Class 1B)</u>:  Class 1B consists of all Other Priority Claims against Devonshire.  Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1B is Unimpaired and is deemed to accept the Plan.

     *4.2.2*   <u>ELP Secured Claims (Class 2B)</u>:  Class 2B consists of all ELP Secured Claims against Devonshire, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for such Allowed ELP Secured Claims, the Holder of the Allowed ELP Secured Claims (or its assignees or designees) shall receive 100% of the Interests in Reorganized Holdings.  Class 2B is impaired and is entitled to vote to accept or reject the Plan.

     *4.2.3*   <u>Other Secured Claims(Class 3B)</u>:  Class 3B consists of all Other Secured Claims against Devonshire.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3B is Unimpaired and is deemed to accept the Plan.

     *4.2.4*   <u>General Unsecured Claims (Class 4B)</u>:  Class 4B consists of all General Unsecured Claims against Devonshire.  Each Holder of an Allowed General Unsecured Claim <u>(except for the Holder of the ELP Deficiency Claim)</u> shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the option of ELP: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the

Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4B is Unimpaired and is deemed to accept the Plan.

> 4.2.5    Interests in Devonshire (Class 5B):  Class 5B consists of all Interests in Devonshire.  On the Effective Date, all Interests in Devonshire shall be reinstated and rendered Unimpaired in accordance with Section 1124 of the Bankruptcy Code and reissued to the Reorganized Holdings.  Class 5B is Unimpaired and is deemed to accept the Plan.

### 4.3    Chatsworth at PGA Plan.

> 4.3.1    Other Priority Claims (Class 1C)  Class 1C consists of all Other Priority Claims against Chatsworth at PGA.  Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1C is Unimpaired and is deemed to accept the Plan.

> 4.3.2    ELP Secured Claims (Class 2C):  Class 2C consists of all ELP Secured Claims against Chatsworth at PGA, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for such Allowed ELP Secured Claims, the Holder of the Allowed ELP Secured Claims (or its assignees or designees) shall receive 100% of the Interests in Reorganized Holdings.  Class 2C is impaired and is entitled to vote to accept or reject the Plan.

> 4.3.3    Other Secured Claims(Class 3C):  Class 3C consists of all Other Secured Claims against Chatsworth at PGA.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the  option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3C is Unimpaired and is deemed to accept the Plan.

> 4.3.4    General Unsecured Claims (Class 4C):  Class 4C consists of all General Unsecured Claims against Chatsworth at PGA.  Each Holder of an Allowed General Unsecured Claim (except for the Holder of the ELP Deficiency Claim) shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the option of ELP: (i) to the extent such Allowed General Unsecured Claim is due and

owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4C is Unimpaired and is deemed to accept the Plan.

> *4.3.5*    <u>Interests in Chatsworth at PGA (Class 5C)</u>:  Class 5C consists of all Interests in Chatsworth at PGA.  On the Effective Date, all Interests in Chatsworth at PGA shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code<u> and reissued to the Reorganized Devonshire</u>.  Class 5C is Unimpaired and is deemed to accept the Plan.

### 4.4    *Chatsworth Properties Plan.*

4.4.1    Other Priority Claims (Class 1D)  Class 1D consists of all Other Priority Claims against Chatsworth Properties.  Except to the extent that a Holder of an Allowed Other Priority Claim has agreed with the Plan Proponents to a different treatment of such Claim, each such Holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between Plan Proponents and the Holder of the Allowed Other Priority Claim.  Class 1D is Unimpaired and is deemed to accept the Plan.

4.4.2    ELP Secured Claims (Class 2D):  Class 2D consists of all ELP Secured Claims against Chatsworth Properties, which Claims shall be deemed Allowed under the Plan.  Upon the terms and subject to the conditions set forth in this Plan, on the Effective Date, in partial satisfaction and discharge of and in exchange for such Allowed ELP Secured Claims, the Holder of the Allowed ELP Secured Claims shall receive 100% of the Interests in Reorganized Holdings.  Class 2D is impaired and is entitled to vote to accept or reject the Plan.

4.4.3    Other Secured Claims(Class 3D):  Class 3D consists of all Other Secured Claims against Chatsworth Properties.  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall, at the option of ELP: (i) be reinstated or otherwise rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the Holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default, (ii) be paid in the ordinary course of business in accordance with the course of practice between the Debtors and such Holder with respect to such Allowed Other Secured Claim, or (iii) receive the Collateral securing such Allowed Other Secured Claim.  Class 3D is Unimpaired and is deemed to accept the Plan.

4.4.4    General Unsecured Claims (Class 4D):  Class 4D consists of all General Unsecured Claims against Chatsworth Properties.  Each Holder of an Allowed General Unsecured Claim (except for the Holder of the ELP Deficiency Claim) shall, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, at the Debtors' option, in consultation with ELP: (i) to the extent such Allowed General Unsecured Claim is due and owing on the Effective Date, (a) be paid in full in Cash on the later of the Effective Date and the date such Claim becomes an Allowed General Unsecured Claim, or, in each case, as soon as practicable thereafter, or (b) otherwise be paid in accordance with the terms of any agreement between the Debtors and such Holder; (ii) to the extent such Allowed General Unsecured Claim is not due and owing on the Effective Date, be paid in full in Cash when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business; or (iii) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the Holder of such Claim.  Class 4D is Unimpaired and is deemed to accept the Plan.

    *4.4.5* <u>Interests in Chatsworth Properties (Class 5D)</u>: Class 5D consists of all Interests in Chatsworth Properties.  On the Effective Date, all Interests in Chatsworth at PGA shall be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code and reissued to the Reorganized Devonshire.  Class 5D is Unimpaired and is deemed to accept the Plan.

## SECTION 5.    ACCEPTANCE OR REJECTION OF THE PLAN

    **5.1    *Impaired Classes.***

    Pursuant to section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Plan may vote separately to accept or reject this Plan.  Each Holder of an Allowed Claim in such an Impaired Class shall receive a ballot and may cast a vote to accept or reject this Plan.  Class 5A is not entitled to receive or retain any property under this Plan and is, therefore, conclusively presumed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Classes 2A, 2B, 2C and 2D are Impaired and are the only Classes of Claims or Interests entitled to vote on this Plan.

    **5.2    *Acceptance by a Class.***

    A Class of Claims entitled to vote to accept or reject this Plan shall be deemed to accept this Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept this Plan.  A Class of Interests is deemed to accept this Plan if this Plan has been accepted by Holders of at least 2/3 of the amount of the Allowed Interests held by Holders of such Interests who vote in such Class.  Classes 1A, 3A, 4A, 1B, 3B, 4B, 5B, 1C, 3C, 4C, 5C, 1D, 3D, 4D and 5D are Unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

## SECTION 6.    MEANS FOR IMPLEMENTATION

    **6.1    *Separate Plans.***

    For purposes of voting on the Plan and receiving Distributions under the Plan, votes will be tabulated separately for each Debtor's Plan and Distributions will be made to each separate Class as provided in such Debtor's Plan, as set forth in Sections 3 and 4 of the Plan.  Except as otherwise provided in the Plan, Distributions in respect of Allowed Claims held against a particular Debtor shall be calculated based upon the value of the assets of that particular Debtor's Estate.  A Claim against multiple Debtors, to the extent Allowed against each respective Debtor, shall be treated as a separate Claim against each such Debtor for all purposes (including, but not limited to, voting and Distributions).

    **6.2    *No Double Payment of Claims.***

    To the extent that a Claim is Allowed against more than one Debtor, there shall be only a single recovery on account of such Allowed Claim; *provided, however*, that the Holder of an Allowed Claim against more than one Debtor may recover distributions from all such co-obligor Debtors until such Holder has received payment in full on such Allowed Claim.  No holder of an

01:14226851.114

Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim and such Claim shall be administered and treated in the manner provided by the Plan only until payment in full on such Allowed Claim.

### 6.3    *Severability of Plans.*

A failure to confirm any one or more of the Debtors' Plans shall not affect other Plans confirmed by the Bankruptcy Court; *provided, however*, that the Plan Proponents reserve the right to withdraw any and all Plans from confirmation if any one or more Plans is not confirmed.

### 6.4    *Sources of Cash for Plan Distributions.*

Except as otherwise provided herein or in the Confirmation Order, all Cash required for the payments to be made hereunder shall be made from the then existing Cash balances in the Reorganized Debtors' unrestricted accounts; *provided, however*, that nothing herein shall be deemed to limit or prohibit the Reorganized Debtors from entering into one or more post-Effective Date credit facilities, to fund additional payments or liquidity requirements of the Reorganized Debtors.

### 6.5    *New Property Management Agreements.*

On the Effective Date, Reorganized Devonshire and Reorganized Chatsworth at PGA shall enter into new property management agreements with the New Property Manager.

### 6.6    *Assumption of Residency Contracts.*

The applicable Debtors shall assume all of the Residency Contracts in their entirety.

### 6.7    *Corporate Existence.*

Except as otherwise provided herein, in the LLC Governance Documents or the Plan Confirmation Order, the Debtors shall continue to exist as Reorganized Debtors after the Effective Date with all the powers of a limited liability company under the laws of their respective jurisdiction of organization and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

### 6.8    *Managers of Reorganized Debtors.*

On the Effective Date, each Reorganized Debtor shall be managed by an entity designated by ELP, until its successor is duly appointed or until earlier removed or replaced in accordance with the LLC Governance Documents of such Reorganized Debtor.

### 6.9    *Officers of Reorganized Debtors.*

On the Effective Date, the existing officers, including but not limited to the Chief Restructuring Officer, of the Debtors may be replaced or removed, in the discretion of the

01:14226851.114

-20-

managers and/or member(s) of Reorganized Debtors in accordance with the applicable LLC Governance Documents.

### 6.10    *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in this Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, or as soon as practicable thereafter, all property of the Debtors' Estates and all Causes of Action of the Debtors (except those released pursuant to the Section 11 of this Plan) shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.  On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtors may operate their ~~business~~businesses and may use, acquire or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 6.11    *Restructuring Transactions.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate this Plan, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Persons may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable Persons agree; (3) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable state law; and (4) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### 6.12    *Corporate Actions.*

Upon the Effective Date, all actions contemplated by this Plan shall be deemed authorized and approved in all respects (whether to occur before, on or after the Effective Date).  All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan shall be deemed to have occurred and shall be in effect, without any further vote, consent, approval, authorization, or other action by such stockholders, security holders, officers, directors, partners, managers, members, or other owners of one or more of the Debtors or Reorganized Debtors, as the case may be, or notice to, order of, or hearing before, the Bankruptcy Court.

On or (as applicable) before the Effective Date, the appropriate officers or managers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating

agreements and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Debtors or the Reorganized Debtors, as the case may be, and any and all other agreements, documents, securities and instruments relating to the foregoing.

### 6.13    Transfer Tax Exemption.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any stamp tax or other similar tax in the United States, and the Plan Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized under the Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under the Plan.

### 6.14    Cancellation of Agreement, Notes and Interests.

On the Effective Date, except to the extent otherwise expressly provided herein, all notes, stock, interests, instruments, certificates, and other documents evidencing any Claims and Interests in any of the Debtors, other than a Claim or Interest that is Unimpaired under the Plan, shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder.  On the Effective Date, except to the extent otherwise expressly provided herein, any indenture or other agreement relating to any of the foregoing shall be deemed automatically extinguished, cancelled and of no further force or effect, and the Debtors shall not have any continuing obligations thereunder.

### 6.15    Non-Voting Equity Securities.

The LLC Governance Documents of each of the Reorganized Debtors shall provide, to the extent not already included in such LLC Governance Documents, that the Reorganized Debtors shall not issue any non-voting equity securities to the extent required by Bankruptcy Code section 1123(a)(6).

### 6.16    Change in Control.

The Consummation of the Plan shall not constitute a change in ownership or change in control under any employee benefit plan or program, executory contract, lease or agreement in existence on the Effective Date to which any Debtor is a party.

### 6.17    *Preservation of Causes of Action of the Debtors.*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, the releases contained in Section 11 of this Plan), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' right to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. No Person may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors or the Reorganized Debtors have released any Person or Person on or before the Effective Date (including pursuant to Section 11 of the Plan or otherwise), the Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in this Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in this Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserves all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or consummation of this Plan. ~~Notwithstanding the foregoing, the Debtors shall be deemed to have released any claims, causes of action or rights arising under sections 510(c), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.~~

## SECTION 7.    DISTRIBUTIONS

### 7.1    *Date of Distributions.*

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is reasonably practicable. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date. The Distributions shall be made to the holders of Allowed Claims as of the Distribution Record Date and the Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of a Claim or Interest occurring after the Distribution Record Date. Changes as to the Holder of a Claim or Interest after the Distribution Record date shall only be valid and recognized for distribution if notice of such change is filed with the Bankruptcy Court, in accordance with Bankruptcy Rule 3001 (if applicable) and served upon the Debtors or Reorganized Debtors (as applicable) and their counsel.

### 7.2    *Disbursing Agent.*

Any Distributions to be made after the Effective Date hereunder shall be made by Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other

security in connection with the making of any such Distributions and shall be authorized and directed to rely upon the Debtors' books and records and the Debtors' representatives and professionals in determining Claims not entitled to a Distribution under the Plan in accordance with the terms of the Plan.

### 7.3     Powers of Disbursing Agent.

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Plan, (ii) make any Distributions contemplated hereby, and (iii) perform such other acts as it deems necessary to make such Distributions pursuant to this Plan.

### 7.4     Delivery of Distributions.

If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the correct current address of such Holder, but no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined to the best of its ability the current address of such Holder, at which time a Distribution shall be made to such Holder without interest; *provided* that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date.  After such date, all unclaimed property or interest in property shall revert to the applicable Reorganized Debtor, and the Claim of any other ~~holder~~Holder to such property or interest in property shall be discharged and forever barred.

### 7.5     Manner of Payment.

At the option of the Plan Proponents, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 7.6     Setoffs.

The Plan Proponents, on behalf of the Debtors, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to this Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of such Allowed Claim or Interest), any claims of any nature whatsoever that the Debtors may have against the Holder of such Allowed Claim or Interest, *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtors or Plan Proponents of any such claim the Debtors may have against the Holder of such Claim or Interest.

### 7.7     Distributions After Effective Date.

For Disputed Claims that have not been Allowed as of the Effective Date, any Distributions made after the Effective Date to Holders of such Disputed Claims (which later become Allowed Claims after the Effective Date) shall be deemed to have been made on the Effective Date.

### 7.8 No Postpetiton Interest.

Unless otherwise specifically provided for herein or in the Plan Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date.

### 7.9 Distributions Free and Clear.

Except as may be otherwise provided herein, any Distributions under this Plan shall be free and clear of any Liens, Claims, encumbrances, and other interests.

### 7.10 Fractional Dollars; De Minimis Distributions.

Notwithstanding any other provision of the Plan, Cash payments of fractions of dollars shall not be made. Whenever any Distribution to a ~~holder~~Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down. The Disbursing Agent shall not be required to make any Cash payment of less than ~~one hundred dollars~~One Hundred Dollars ($100.00) with respect to any Claim unless a request therefor is made in writing to such Disbursing Agent; *provided, however*, that the Disbursing Agent shall have no obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim is equal to or greater than ~~ten dollars~~Ten Dollars ($10.00).

### 7.11 Prepayment.

Except as otherwise provided in this Plan or the Plan Confirmation Order, Reorganized Debtors shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

## SECTION 8.    PROCEDURES FOR DISPUTED CLAIMS

### 8.1 Allowance of Claims and Interests.

Except as expressly provided herein, or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Plan Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Plan Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.

### 8.2 Objections to Claims.

The Debtors, Reorganized Debtors and ELP shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests under this Plan or otherwise. Any objections to Claims shall be served and filed on or before the later of (i) the Claims Objection Deadline or (ii) such later date as may be fixed by the Bankruptcy Court. If an objection has not been filed to a Claim or the Schedules have not been amended with respect to a Claim that (a) was scheduled by the Debtors but (b) was not scheduled as contingent, unliquidated,

and/or disputed, by the Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier.

### 8.3    *Estimation of Claims.*

Before or after the Effective Date, the Plan Proponents may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Proponents may pursue supplementary proceedings to object to the allowance of such Claim.

### 8.4    *Distributions Relating to Disputed Claims.*

At such time as a Disputed Claim becomes an Allowed Claim, ~~the Disbursing Agent~~a Distribution shall ~~distribute~~be made to the Holder of such ~~Claim, such Holder's *pro rata* portion of the property distributable with respect to the Class in which such Claim belongs~~Allowed Claim in accordance with the provisions of this Plan.  To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed ~~and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the Holders of Allowed Claims in the same Class~~.

### 8.5    *Distributions after Allowance.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

### 8.6    *Rights to Settle Claims.*

On and after the Effective Date, ELP shall have the sole authority to settle or otherwise resolve any objections to Claims and to compromise, settle, or otherwise resolve any Disputed Claims without further review or approval of the Bankruptcy Court.

**SECTION 9.        EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

>    *9.1      Assumption and Rejection of Contracts and Leases.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, except (i) all Residency Contracts, which shall be assumed by the applicable Debtor, (ii) contracts or leases that were previously assumed or rejected by the Debtors, (iii) contracts or leases that are the subject of a motion to assume filed by the Debtors on or before the Confirmation Date, or (iv) contracts or leases set forth in a schedule ~~1 hereto as an~~of executory ~~contract or unexpired lease to be assumed~~contracts or unexpired leases to be assumed ("Assumption Notice"), which Assumption Notice shall be served upon all affected parties and filed with the Court no later than fifteen (15) days prior to the Confirmation Hearing.  The Debtors and the Reorganized Debtors, as applicable, shall have the right to amend the Assumption Notice at any time prior to the Effective Date (i) to delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (ii) to add any executory contract or unexpired lease and provide for its assumption under the Plan (each such notice, an "Amended Assumption Notice").  The Debtors or Reorganized Debtors, as applicable, will provide notice and opportunity to object, as set forth in Section 9.4, of any Amended Assumption Notice to the party or parties to those agreements affected by the amendment.   The Plan Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described ~~above as of the Effective Date.~~on the Effective Date.  No contract or lease shall be deemed assumed or rejected by the Plan Confirmation Order on the Confirmation Date.  Following the Effective Date, all executory contracts or unexpired leases that have not been expressly assumed as set forth above shall be rejected.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

>    *9.2      Inclusiveness.*

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

01:~~14226851.1~~14

-27-

**9.3     *Payments Related to Assumption of Contracts and Leases.***

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder are in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof. ~~If there is a dispute regarding (i) the nature or~~Unless the parties mutually agree to a different date, such payment shall be made in Cash, within ten (10) Business Days following the later of: (i) the Effective Date and (ii) entry of a Final Order resolving any disputes regarding (A) the amount of ~~any~~the Cure~~;~~, (~~ii~~B) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (~~iii~~C) any other matter pertaining to assumption~~, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption and assignment~~.

**9.4     *Objections to Assumption/Cure Amounts.***

Any Person that is a party to an executory contract or unexpired lease that will be assumed under the Plan and that objects to such assumption (including the proposed Cure) must file with the Bankruptcy Court and serve upon parties entitled to notice a written objection. This objection must be filed and served on the Debtors or Reorganized Debtors, as applicable, and their counsel on or before five (5) days prior to the Confirmation Hearing or, in the event an Amended Assumption Notice is served on such party, ten (10) days following service of such Amended Assumption Notice. Any Person that fails to timely file and serve such objection shall be deemed to waive any and all objections to the proposed assumption (including the proposed Cure) of its contract or lease.

In the absence of a timely objection by a Person that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination regarding the amount of any Cure and compensation due under the applicable executory contract or unexpired lease, as well as a conclusive finding that the Debtors or Reorganized Debtors, as applicable, have demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease, to the extent required.

**9.5     ~~9.4~~*Rejection Damages Claims.***

All Rejection Damages Claims ~~must be~~or other claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be filed and served upon the applicable Debtor or Reorganized Debtor, as applicable, and its counsel within thirty (30) days after the earlier of (i) the ~~date of entry of an order of the Bankruptcy Court approving such rejection or (ii) the Plan Confirmation Date; provided, however, that any such Rejection Damages Claim arising out of the rejection of an executory contract or unexpired lease that is filed after the Effective Date shall be served on the Reorganized Debtors~~Effective Date or (ii) the date provided in any other applicable Order of the Bankruptcy Court. Any Rejection Damages Claims not filed within such time shall be forever barred from assertion against the Debtors, their Estates ~~and their property~~, the Reorganized Debtors and their property and such Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims, absent further order of the Bankruptcy Court. All Rejection Damages Claims, except for the SHP Rejection Damages Claims, will be treated as General Unsecured Claims

against the particular Debtor to which the rejected contract related.  The SHP Rejection Damages Claim together with all other claims of the Anderson Parties will be satisfied in full by the Anderson Settlement Payment.

### 9.6    9.5 Insurance Policies.

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors if necessary to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and such Insurance Policies shall continue in effect after the Effective Date.  Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies.

### 9.7    9.6 Contracts and Leases Entered Into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any executory contracts and unexpired leases assumed by such Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed executory contracts and unexpired leases) will survive and remain unaffected by entry of the Plan Confirmation Order.

## SECTION 10.    CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

### 10.1    Conditions to Confirmation of Plan.

Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived:

(a)    An order, in form and substance satisfactory to the Plan Proponents, finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered;

(b)    The proposed Plan Confirmation Order shall be in form and substance satisfactory in all respects to the Plan Proponents; and

(c)    All provisions, terms and conditions hereof are approved in the Plan Confirmation Order.

### 10.2    Conditions Precedent to Effective Date of the Plan.

The occurrence of the Effective Date of this Plan is subject to the following conditions precedent:

(a)    the Plan Confirmation Order, in form and substance satisfactory in all respects to the Plan Proponents, shall have been entered by the Bankruptcy Court and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto; and

01:14226851.114

(b)    all other actions, documents, and agreements necessary to implement the terms and provisions of the Plan shall have been executed and delivered by the parties thereto, and, in each case, all conditions to their effectiveness shall have been satisfied or waived as provided therein.

### 10.3    Waiver of Conditions.

Unless otherwise specifically provided in this Plan, the conditions set forth in Sections 10.1 and 10.2 of this Plan may be waived in whole or in part by the Plan Proponents without notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors or ELP regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

### 10.4    Effect of Failure of Conditions.

If the conditions precedent specified in Sections 10.1 and 10.2 hereof have not been satisfied or waived by the Plan Proponents within sixty (60) days after the Plan Confirmation Date, which period may be extended by the Plan Proponents in their sole discretion, then (i) the Plan Confirmation Order shall be vacated, (ii) no Distributions under this Plan shall be made, (iii) the Debtors and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Plan Confirmation Date as though the Plan Confirmation Date never occurred, and (iv) all of the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors or otherwise.

## SECTION 11.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### 11.1    Binding Effect.

On the Plan Confirmation Date, this Plan shall be binding upon the Debtors and all present and former Holders of Claims against and Interests in any Debtor, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject this Plan.

### 11.2    Compromise and Settlement of Claims, Interests and Controversies.

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and

controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable. In accordance with the provisions of this Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to, action by, or order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against it and Causes of Action against other Persons.

11.3    *Claims Against Guarantors.*

For the avoidance of doubt, and notwithstanding anything to the contrary contained herein, ELP shall retain and be entitled to enforce any right, claim, or cause of action it may have against Craig E. Anderson pursuant to the Anderson Guaranty.

**11.3** ~~11.4~~ **Discharge.**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Interest based upon such Claim, debt, right or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such Claim, debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

**11.4** ~~11.5~~ **Injunction.**

**Except as otherwise expressly provided in this Plan, the Plan Confirmation Order or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Interests in any or all of the Debtors, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim or Interest, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or against the property or interests in property of the Debtors on account of any such Claim or**

Interest, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors on account of any such Claim or Interest, and (~~e~~e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and causes of action which are retained pursuant to this Plan.

All Persons shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their assets and properties any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity for any kind or nature that occurred before the Effective Date.

### *11.5* ~~*11.6*~~ *Term of Injunctions or Stays.*

Unless otherwise provided in this Plan or Plan Confirmation Order, all injunctions or stays pursuant to sections 105 or 362 of the Bankruptcy Code arising under or entered during the Chapter 11 Cases, or otherwise, and in existence on the Plan Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of this Plan or the Plan Confirmation Order, as applicable.

### *11.6* ~~*11.7*~~ *Injunction Against Interference with Plan.*

Upon the Bankruptcy Court's entry of the Plan Confirmation Order, all Holders of Claims and Interests, the Debtors, and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the Plan Proponents' and their respective affiliates', employees', advisors', officers' and directors', and agents' implementation or consummation of this Plan.

### *11.7* ~~*11.8*~~ *Debtor Releases.*

ON THE EFFECTIVE DATE, THE DEBTORS AND THEIR RELATED PERSONS SHALL RELEASE AND BE PERMANENTLY ENJOINED FROM ANY PROSECUTION OR ATTEMPTED PROSECUTION OF ANY AND ALL CLAIMS EXCEPT FOR CLAIMS ARISING FROM GROSS NEGLIGENCE OR WILFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION AND CAUSES OF ACTION THAT CONSTITUTE PROPERTY OF ANY DEBTOR'S ESTATE, INCLUDING THE AVOIDANCE ACTIONS, THAT THEY HAVE OR MAY HAVE AGAINST ANY OF THE THIRD PARTY RELEASEES, AND ALL OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES AND THEIR RESPECTIVE PROPERTY IN CONNECTION WITH (I) THE ELP LOAN DOCUMENTS OR ACTIONS TAKEN IN CONNECTION THEREWITH, (II) THE DEBTORS, AND (III) THE CHAPTER 11 CASES.

ON THE EFFECTIVE DATE, AND EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR IN THE PLAN CONFIRMATION ORDER, THE THIRD PARTY

RELEASEES, AND ALL OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, AGENTS, FINANCIAL ADVISORS, ATTORNEYS, EMPLOYEES, PARTNERS, AFFILIATES AND REPRESENTATIVES AND THEIR RESPECTIVE PROPERTY SHALL BE RELEASED FROM ANY AND ALL CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION, AVOIDANCE ACTIONS AND LIABILITIES IN EACH CASE THAT CONSTITUTE PROPERTY OF ANY DEBTOR'S ESTATE THAT THE DEBTORS OR THEIR RELATED PERSONS MAY BE ENTITLED TO ASSERT, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR THEREAFTER ARISING, BASED IN WHOLE OR IN PART UPON ANY, ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING, BUT NOT LIMITED TO, THE NEGOTIATION, SOLICITATION, CONFIRMATION AND CONSUMMATION OF THIS PLAN.

THIS RELEASE AND THE EXCULPATION SET FORTH IN SECTION ~~11.9~~11.8 BELOW ARE INTEGRAL PARTS OF THIS PLAN.  ELP IS AGREEING TO PAY THE MEZZ PAYMENT, THE ANDERSON SETTLEMENT PAYMENT AND FOREGO DISTRIBUTION ON ACCOUNT OF ITS ELP DEFICIENCY CLAIM PURSUANT TO THIS PLAN AND FOR THE BENEFIT OF THE DEBTORS' ESTATES, BUT IS ONLY WILLING TO DO SO IF IT RECEIVES ASSURANCE THAT IT WILL NOT BE SUBJECT TO POTENTIAL LITIGATION.

*11.8*    ~~*11.9*~~ Exculpation.

None of the Debtors, HJSI-II, LLC or ELP, nor any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns shall have or incur any liability to any holder of a Claim or Interest, or other party in interest, or any of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents or any of their successors and assigns, for any act or omission in connection with, related to, or arising out of, in whole or in part, the Chapter 11 Cases, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, including without limitation, the negotiation and solicitation of this Plan, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and, in all respects, the ~~Third Party Releasees~~Debtors, HJSI-II, LLC and ELP and each of their respective members, officers, directors, employees, advisors, professionals, attorneys or agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

This exculpation and the release set forth in Section ~~11.8~~11.7 above are integral parts of this Plan.  ELP is agreeing to pay the Mezz Payment, the Anderson Settlement Payment and forego distributions on account of its ELP Deficiency Claim pursuant to this Plan and for the benefit of the Debtors' Estates, but is only willing to do so if it receives assurance that it will not be subject to potential litigation.

**11.9**   ~~11.10~~ *Third Party Releases.*

On the Effective Date, except as otherwise provided herein and except for the right to enforce the Plan, all Persons who have voted to accept the Plan or who are entitled, directly or indirectly, to receive a distribution hereunder, shall be deemed to forever release, waive and discharge the Debtors, the Reorganized Debtors, any ~~Committe~~Committee appointed in the Chapter 11 Cases, HJSI, HJSI-II, LLC, ELP, the Administrative Agent, the members of the Debtors, the Debtors' manager(s), and each of their respective constituents, principals, officers, directors, employees, agents, representatives, attorneys, professionals, advisors, affiliates, funds, successors, predecessors, and assigns of any from any and all Liens, Claims, Causes of Action, liabilities, encumbrances, security interests, Interests or charges of any nature or description whatsoever relating to the Debtors, the Chapter 11 Cases or affecting property of the Debtors' Estates, whether known or unknown, discovered or undiscovered, scheduled or unscheduled, contingent, fixed, unliquidated or disputed, matured or unmatured, contingent or noncontingent, senior or subordinated, whether assertable directly or derivatively by, through, or related to the Debtors, against successors or assigns of the Debtors and the individuals and entities listed above whether at law, in equity or otherwise, based upon any condition, event, act, omission occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way or arising out of, in whole or in part, the Chapter 11 Cases, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, including without limitation, the negotiation and solicitation of this Plan, all regardless of whether (a) a Proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest in Allowed or (c) the holder of such Claim or Equity Interest has voted to accept or reject the Plan, except for willful misconduct or gross negligence.

**11.10**   ~~11.11~~ *Release of Liens.*

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

## SECTION 12.        RETENTION OF JURISDICTION

Notwithstanding entry of the Plan Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)        to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)      to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Plan Confirmation Date;

(c)      to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)      to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)      to enter, implement, or enforce such orders as may be appropriate in the event the Plan Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Plan Confirmation Order, or any other order of the Bankruptcy Court;

(g)      to hear and determine any application to modify this Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Plan Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)      to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Plan Confirmation Date;

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Plan Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(k)      to hear any disputes arising out of arising out of, and to enforce any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(l)      to determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

(m)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(o)      to enter a final decree closing the Chapter 11 Cases.

## SECTION 13.      MISCELLANEOUS PROVISIONS

### 13.1    *Successors and Assigns*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executory, administrator, successor or assign of that Person.

### 13.2    *Payment of Statutory Fees.*

All fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtors.  All such fees that become due and payable thereafter by a Debtor shall be paid by the respective Reorganized Debtor.  The Reorganized Debtors shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Cases are closed or converted and/or the entry of final decrees.  The Reorganized Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Reorganized Debtors.

### 13.3    *Substantial Consummation.*

On the Effective Date, this Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

### 13.4    *Amendments.*

#### 13.4.1  *Modifications to Plan.*

The Plan or any Exhibits thereto may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Plan Confirmation Date, the Plan Proponents may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Plan Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

#### 13.4.2  *Other Amendments.*

The Plan Proponents may make appropriate technical adjustments and modifications to this Plan prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 13.5    Effectuating Documents and Further Transactions.

Each of the ~~officers~~managers of the Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable ~~members~~Debtor, to, and shall upon the request of the Debtors, execute, deliver, file, or record such contracts, instruments, certificates, deeds, bills of sale, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 13.6    Revocation or Withdrawal of the Plan.

The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Effective Date and to file subsequent plans.  If the Plan Proponents revoke or withdraw the Plan as to any or all of the Debtors, or if Confirmation or Consummation of the Plan as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by such Debtors or any other Person.

### 13.7    Severability.

If, prior to the entry of the Plan Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Plan Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.8    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Plan and the transactions consummated or to be consummated in connection therewith.

### 13.9    Time.

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Plan unless otherwise set forth herein or provided by the Bankruptcy Court.

### 13.10    Entire Agreement.

On the Effective Date, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### 13.11    Section 1125(c) Good Faith Compliance.

The Plan Proponents, and each of their Related Persons, shall be deemed to have acted in good faith under section 1125(c) of the Bankruptcy Code.

### 13.12    Solicitation.

As of and subject to the occurrence of the Plan Confirmation Date, the Plan Proponents shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (c) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

01:14226851.114

**13.13   *Effective Notice.***

All notices to or requests of the Plan Proponents by parties in interest in connection with this Plan shall be in writing and delivered either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery, all charges prepaid, and shall be deemed to have been given when received by:

1.   The Debtors:

> Devonshire at PGA National, LLC
> c/o HJSI Devonshire II, LLC, Manager
> 2150 Post Road, Suite 301
> Fairfield, CT  06824
> Attn:   R. Jeffrey Sands
> Telephone: (203) 418-9002
>
> - with a copy to –
>
> M. Blake Cleary, Esq.
> Young Conaway Stargatt & Taylor, LLP
> Rodney Square
> 1000 North King Street
> Wilmington, DE 19801
> Email: mbcleary@ycst.com
> Telephone:  (302) 571-6714

2.   ELP:

> ELP West Palm, LLC
> Gerald F. Doherty
> Senior Vice President & General Counsel
> Erickson Living Properties, LLC
> 701 Maiden Choice Lane
> Baltimore, MD 21228
> Email: Gerald.Doherty@erickson.com
> Telephone: (410) 402-2350
>
> -with a copy to-
>
> DLA Piper LLP US
> 1251 Avenue of the Americas
> New York, New York  10020
> Attn:   Thomas R. Califano, Esq.
>              Gabriella L. Zborovsky, Esq.
> Telephone:      (212) 335-4500

01:~~14226851.1~~14

-and-

DLA Piper LLP (US)
~~919~~2101 North Market Street, Suite ~~1500~~2100
Wilmington, DE, 19801
Attn:   R. Craig Martin, Esq.
Telephone:    (302) 468-5700

**Dated:** ~~September 19,~~ October 15, 2013           **Respectfully submitted,**
**Wilmington, Delaware**
**DEVONSHIRE PGA HOLDINGS, LLC, a**                 **ELP WEST PALM, LLC, a Maryland limited**
**Delaware limited liability company**              **liability company**
**(for itself and on behalf of each Debtor)**       **By:  Erickson Living Properties, its sole member**

**By:** _____               **By:** _____
**Name:** <u>Paul Rundell</u>                      **Name:** <u>Gerald F. Doherty</u>
**Title:** <u>Chief Restructuring Officer</u>      **Title:** <u>Senior Vice President & General Counsel</u>

**Schedule 1**
To be updated.

Document comparison by Workshare Compare on Tuesday, October 15, 2013 8:55:58 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://WORKSITE02/YCST01/14226851/1 |
| Description | #14226851v1<YCST01> - Devonshire - Plan |
| Document 2 ID | interwovenSite://WORKSITE02/YCST01/14223219/1 |
| Description | #14223219v1<YCST01> - Devonshire - Amended Plan |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 224 |
| Deletions | 260 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 490 |