# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Devonshire PGA Holdings LLC, et al., | ) | Case No. 13-12460 (CSS) |
| | ) | |
| Debtors. | ) | Re: Docket Nos. 343 & 364 |
| | ) | |

### OPINION[1]


DLA PIPER LLP
Thomas R. Califano
1251 Avenue of the Americas
New York, New York 10020

   -and-

DLA PIPER LLP
Stuart Brown
R. Craig Martin
Daniel N. Brogan
1201 North Market Street, Suite 2000
Wilmington, DE 19801
Counsel to ELP West Palm, LLC


POTTER ANDERSON
& CORROON LLP
Timothy R. Dudderar
R. Stephen McNeil
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801


Dated: April 15, 2016

Sontchi, J. _____

---

[1] The Court hereby makes the following findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052, which is applicable to this matter by virtue of Fed. R. Bankr. P. 9014. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions or law constitute findings of fact, they are adopted as such.

### INTRODUCTION

ELP West Palm, LLC ("*ELP*"), is successor to the the Reorganized Debtors.  Potter Anderson & Corroon, LLP ("*Potter*") jointly represented three of the Debtors and a non-Debtor, CA Capital, LLC, in two Delaware Chancery proceedings in 2013.  Potter timely submitted claims for payment against the Debtors it represented.  ELP does not dispute that Potter actually represented the Debtors, but nonetheless requests that this Court enter summary judgment disallowing Potter's claims under 11 U.S.C. § 502(b)(1).

Section 502(b)(1) instructs the Court to disallow claims "to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  ELP therefore carries two burdens.  First, ELP must point to specific law(s) that would render Potter's claim unenforceable.  Second, ELP must demonstrate that the facts of this case make that law applicable.  Because ELP is the movant for summary judgment, ELP must further show that Potter may not genuinely dispute that: (1) the law ELP cites is applicable; (2) the cited law renders Potter's claim unenforceable; and (3) Potter has no defense that would prevent application of the cited law.

ELP argues that four sources of applicable law or agreement render Potter's claim unenforceable.  First, ELP argues that Potter was not validly engaged to represent the Debtors under state contract law.  Second, ELP appears to make an argument on equitable principles that Potter may not enforce its claims against the Debtors because the Debtors did not benefit from Potter's representation.  Third, ELP argues that Potter was "conflicted" under the Delaware Lawyers' Rules of Professional Conduct in representing the Debtors and because the record contains no written waiver of this conflict, Potter's claim against the Debtors is unenforceable.  Finally, ELP argues that the 2013 Settlement Agreement approved by this Court bars Potter's claims.

The Court will deny ELP's motion for summary judgment.  First, ELP has failed to supply this Court with proof that any applicable principle of contract law or equity

would render Potter's claim unenforceable.  Potter's claims are prima facie valid; for the Court to disallow those claims, ELP must *specifically point to an applicable state or federal law which would render those claims unenforceable*.  Not only has ELP has failed to carry its burden upon summary judgment, it has simply failed to point to any *specific* applicable law.  Broad generalizations about what is "right," "fair," or "logical" are not a basis for disallowance under § 502(b)(1).

Second, ELP's argument that Potter was conflicted in representing the Debtors presents a legal basis for disallowance.  However, Potter has pointed to evidence in the record sufficient to create a genuine dispute of material fact on whether Potter was conflicted.  Because the record does not allow the Court to conclude that Potter was conflicted, summary judgment may not be granted to ELP on this theory.  Finally, ELP has failed to demonstrate that any applicable law would make the 2013 Settlement Agreement binding upon Potter.  The record clearly shows that neither Potter nor any of its agents were a party to that agreement.  As a result, summary judgment may not be granted to ELP on this theory.

## JURISDICTION

The United States Bankruptcy Court for the District of Delaware (the "Court") has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b).  This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409(a).  This action is a contested matter pursuant to Federal Rule of Bankruptcy Procedure 9014.

**UNDISPUTED FACTS**

The Debtors[2] are four Delaware LLCs; together, they compromise a retirement community located within the grounds of PGA National in Palm Beach Gardens, Florida.[3]  Prior to the bankruptcy filing, the Debtors were ultimately owned by SHP Senior Living Investments, LLC ("*SHP*"), whose ultimate sole owner was an individual, Craig Anderson ("*Anderson*").[4]  On February 20, 2007, Anderson created CA Capital, a limited liability company in which he held a 100% ownership interest.[5]

The Debtors' LLC Agreements specify that the sole member of each company holds the exclusive power to appoint a Manager for that company.[6]  The LLC Agreements further specify that the Manager is an agent of the company, whose actions are binding upon the company if taken in accordance with the LLC Agreement.[7]  The LLC Agreements also state that the Manager "shall have full, exclusive and complete discretion to manage the business affairs of the company…."[8]  On February 20, 2007, Anderson, through his control of each individual company, appointed CA Capital as Manager of each of the Debtors.[9]

On May 1, 2007, the Operating Debtors entered into a credit and security agreement in exchange for a term loan of $155,220,000 and a $6,400,000 revolving line of credit (the

---

[2]   Devonshire PGA Holding, LLC ("*Holdings*") is a holding company and was the sole member of Devonshire at PGA National, LLC ("*Devonshire*"), which owned the land on which the retirement community operates.  Devonshire, in turn, was the sole member of Chatsworth at PGA National, LLC and Chatsworth PGA Properties, LLC, who owned and operated, respectively, an independent living facility and a healthcare facility on this land (together, excluding Holdings, the "*Operating Debtors*"). *Potter MSJ Response*, D.I. 414, p. 4.

[3]   *ELP MSJ Memorandum*, D.I. 397, p. 11, ¶ 5.

[4]   *Potter MSJ Response* at p. 4.

[5]   *Id.*

[6]   *ELP MSJ Memorandum* at Ex. 4.

[7]   *Id.*

[8]   *Id.*

[9]   *Potter MSJ Response* at p. 4.

"*Senior Credit Agreement*").[10]   The Senior Credit agreement was extended by Merrill Lynch Capital ("*Merrill*" and together with its successors, the "*Senior Agent*"), as agent for a consortium of lenders (the "*Senior Lenders*").   That same day, Holdings and Devonshire pledged their equity interests in the Operating Debtors as collateral to the Senior Lenders under an Ownership Pledge, Assignment and Security Agreement (together, the "*Pledge Agreements*").[11]   In connection with this exchange, Holdings also obtained a $19,625,000 mezzanine term loan from Merrill (the "*Mezzanine Credit Agreement*").   As further security for this agreement, SHP entered into an Ownership Pledge, Assignment and Security Agreement with Merrill (the "*SHP Pledge Agreement*"), pursuant to which Merrill received a security interest in SHP's 100% equity in Holdings.[12]

GE Business Financial Services Inc. ("*GE*") later succeeded Merrill as Senior Agent. On May 24, 2011, GE filed a lawsuit in the Delaware Court of Chancery (the "*GE Action*") against multiple defendants, including the Debtors.[13]   Anderson, acting through CA Capital, retained Potter to represent all the defendants in this action under a written engagement letter executed on June 9, 2011.[14]  On October 12, 2011, all parties to the GE Action filed a joint motion to dismiss without prejudice, which was granted on October 14, 2011.[15]

Trimont Real Estate Advisors, Inc. ("*Trimont*") later succeeded GE as Senior Agent. On May 12, 2012, Trimont issued a Notice of Default to the Debtors.[16]  In August 2012, Trimont filed a foreclosure action in Florida state court (the "*FL Action*"), alleging that

---

[10]    *Id*.

[11]    *Id*.

[12]    *Id*. at p. 5 (*citing* Ex. 12).

[13]    *Id*. at p. 5.

[14]    *Id*. (*citing* Ex. 8).

[15]    *Id* at p. 6.

[16]    *Id*. at p. 6 (*citing* Dudderar Decl. Ex. C, ¶ 29).

an Event of Default had occurred and, therefore, Trimont was entitled to foreclose on the mortgages and equity interests pledged by the Debtors.[17]  The defendants denied that an Event of Default had occurred and asserted numerous affirmative defenses and counterclaims.[18]  The defendants asserted that GE and the Senior Lenders had engaged in substantial misconduct, had attempted to cause an Event of Default to occur and had acted towards—and dealt with—the defendants in bad faith.[19]  They also argued that Trimont lacked the standing to pursue its claim because Trimont had not been properly appointed as Agent under the Senior Credit Agreement.[20]  Potter was not retained by— and did not represent any party in—the Florida Action.

On July 2, 2013, Trimont sent notice to the Debtors that it was replacing CA Capital as Manager of the Operating Debtors and appointing DPGA as Manager.[21]  On the same day, DPGA and Trimont initiated two separate actions (the "*DE DPGA Action*" and the "*DE Trimont Action*" and together, the "*DE Chancery Actions*") in Delaware.  Both sought declaratory judgment upholding Trimont's removal of CA Capital and appointment of DPGA as Manager.[22]  DPGA immediately filed a complaint and a motion requesting the entry of a *status quo* order (the "*Proposed Status Quo Order*").[23]  The Proposed Status Quo Order would have prevented CA Capital from taking actions that would alienate property of the Operating Debtors or cause the Operating Debtors to acquire any

---

[17]  *Id*. at p. 6.

[18]  I*d*. at p. 6 (*citing* Dudderar Decl. Ex. D ¶ 28); *ELP MSJ Memorandum* at Ex. 10, p. 13-18.

[19]  *ELP MSJ Memorandum* at Ex. 10, p. 15-17.

[20]  *Id*. at p. 13-15.

[21]  *Potter MSJ Response* at p. 7.

[22]  *Id*.

[23]  *ELP MSJ Memorandum* at p. 11.

substantial obligations.[24]    It would have, however, specifically allowed for the Operating Debtors to pay their attorneys in the DE DPGA Action.[25]

Anderson, again through his control of both CA Capital and the Debtors, retained Potter to represent CA Capital and the Debtors in the DE Chancery Actions.[26]    This agreement was reached orally.[27]    Potter entered its appearance on July 5, 2013.[28]    That same day, the defendants in the DE DPGA Action filed a motion to dismiss or stay the proceeding on the grounds that it was duplicative of the Florida Action and required resolution of identical legal issues arising from an identical nexus of facts.[29]    The defendants argued that although the Florida Action was facially one of "property control" and the DE DPGA Action was one of "corporate control," both were in fact contract disputes at their core revolving around a single question—whether an inexcusable "Event of Default" under the Senior Creditor Agreement had occurred in 2012.[30]    Trimont agreed to stay the DE Trimont Action until this motion in the DE DPGA Action was resolved.[31]

Both sides continued to submit briefings on the Proposed Status Quo Order and the motion to dismiss or stay, and the Chancery Court set an expedited hearing on these issues for July 30, 2013.[32]    On July 24, 2013, ELP became sole lender under the Senior Credit Agreement and assumed control of both Trimont and DE DPGA.  ELP's counsel,

---

[24]    *Id.*

[25]    *Id.*

[26]    *Id.* at p. 12.

[27]    *Potter MSJ Response* at p. 8-9.

[28]    *Id.*

[29]    *Id* at p. 9 (*citing* Ex. 9).

[30]    *Potter MSJ Response* at Ex. E, p. 12.

[31]    *Potter MSJ Response* at p. 9.

[32]    *Id.*

DLA Piper, LLP, then entered its appearance on behalf of ELP in the DE Chancery Actions.[33]

The Chancery Court heard arguments on the competing motions on July 30, 2013. The Court declined to enter the Proposed Status Quo Order and reserved judgment on all pending motions, effectively staying the case until the Court came to a decision on the motion to dismiss or stay.[34]   At no point during the DE Chancery Actions did ELP, Trimont or DPGA object to Potter's representation of the Operating Debtors.[35]

The Chancery Court never issued a decision on the pending motions.[36]   On June 17, 2013, HSJI, the Mezzanine Lender, had sent a notice of Disposition of Collateral to SHP, stating that it was foreclosing on SHP's 100% interest in Holdings and would conduct a public auction on August 15, 2013.[37]   On September 12, 2013, an entity named HSJI Devonshire II, LSC, ("*HSJI II*") sent a letter to Potter informing Potter that HSJI II had purchased SHP's 100% interest in Holdings at a foreclosure sale held that same day and, effective immediately, CA Capital had been removed as Manager of the Debtors.[38]   The letter directed that Potter take no further actions in the DE DPGA Action.[39]   CA Capital also received a letter on September 12, 2013, from HSJI II notifying it that it had been removed as Manager of the Debtors and was being replaced by HSJI II.[40]   The DE Chancery Actions were voluntarily dismissed on September 25, 2013.[41]

---

[33]  *ELP MSJ Memorandum* at p. 13.

[34]  *ELP MSJ Memorandum* at Ex. 26, p. 68.

[35]  *Potter MSJ Response* at p. 10.

[36]  *Id*. at p. 11.

[37]  *ELP MSJ Memorandum* at p. 10 (*citing* Ex. 11).

[38]  *Potter MSJ Response* at p. 11 (*citing* Ex. F).

[39]  *Id*.

[40]  *ELP MSJ Memorandum* at p. 14 (*citing* Ex. 27).

[41]  *Potter MSJ Response* at p. 11.

On September 19, 2013, the Debtors filed their voluntary Chapter 11 petitions in this Court.  The following day, Anderson, CA Capital, ELP, the Debtors and a number of other parties entered into a settlement agreement (the "*Settlement Agreement*").[42]  The Settlement Agreement was approved by this Court on October 16, 2013.[43]  The Debtors' cases were administratively consolidated and the Debtors filed their schedules and statements of financial affairs on October 21, 2013.[44]  In their initial filings, the Debtors listed Potter as a creditor holding a non-disputed claim for $225,561.48.[45]  On December 2, 2013, the Court entered an order confirming the Debtors' Plan of Reorganization; the Plan expressly provided that ELP and the Debtors retained the power to amend the Debtors Schedules and provided ELP with standing to dispute claims filed against the Debtors.[46]

On March 14, 2014, the Debtors amended their schedules and listed Potter's claim as disputed.[47]  Potter then filed a proof of claim against each of the Operating Debtors in the amount of $236,618.78 on April 2, 2014.[48]  ELP filed a full objection to these claims on May 23, 2014.[49]  Potter filed a response on June 20, 2014.[50]  ELP subsequently filed a motion for summary judgment.  This is the Court's decision on the summary judgment motion.

---

[42]   *ELP MSJ Memorandum* at p. 14.

[43]   D.I. 95.

[44]   *ELP MSJ Memorandum* at p. 15.

[45]   *ELP MSJ Memorandum* at Ex. 29.

[46]   D.I. 205.

[47]   *ELP MSJ Memorandum* at Ex. 30.

[48]   *Id.* at Ex. 31.

[49]   *ELP Claims Objection*, D.I. 343.

[50]   *Potter Claims Objection Response*, D.I. 364.

**D**ISCUSSION

## I.  Adjudication of Claim Objections on Summary Judgment

### a.  Summary Judgment Standard

Fed.R.Bank.P. 9014 governs contested matters, and provides that Fed.R.Bank.P. 7056 applies in contested matters before the Court. Fed.R.Bank.P. 7056, in turn, makes Fed.R.Civ.P. 56 (Summary Judgment) applicable to contested matters.  Summary judgment is designed "to avoid trial or extensive discovery if facts are settled and dispute turns on issue of law."[51]   The Court's aim upon summary judgment is "to isolate and dispose of factually unsupported claims or defenses"[52] in order to avert "full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways."[53]

Fed.R.Civ.P. 56(a) therefore requires the Court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A "material fact" is one that might affect the outcome of the suit and a "genuine dispute" means that the evidence pointed to by the non-movant would allow a reasonable trier-of-fact to decide the "material fact" in the non-movant's favor.[54]  The movant for summary judgment bears the initial burden of persuasion, and must point to an absence of evidence in support of the non-movant's case.[55]  Ultimately, the non-movant must point to sufficient evidence that the trier-of-fact could reasonably find in their favor at trial.[56]

---

[51]  11–56 MOORE'S FEDERAL PRACTICE, § 56.02 (Matthew Bender 3d ed.).

[52]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

[53]  *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991).

[54]  *See Mesnick*, 950 F.2d at 822.  *See also Leonard v. General Motors Corp. (In re Headquarters Dodge),* 13 F.3d 674, 679 (3d Cir.1993); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

[55]  *See Celotex Corp.,* 477 U.S. at 323-325.

[56]  See *Leonard*, 13 F. 3d at 679; *Matsushita*, 475 U.S. at 586-87.

Applying this standard is a three-step process: (1) the Court must determine "the matter or matters in dispute;" (2) the Court must ascertain "the law governing such matters;" and (3) the Court must use that law to "gauge the materiality of any factual issues" to "refine and resolve the legal issues."[57]   When a motion for summary judgment presents no triable issues of fact, the Court may adjudicate the legal consequences to be drawn from the undisputed facts.[58]

### b. Claim Objections

11 U.S.C. § 502(a) provides that "a claim or interest, proof of which is filed… is deemed allowed, unless a party in interest… objects."   ELP has objected to Potter's claim under 11 U.S.C. § 502(b)(1), which empowers the Court to disallow a claim to the extent that "such claim is unenforceable…"   In the absence of overruling federal law, the Court will look to state law to determine if a claim is enforceable.[59]

In adjudicating a claim objection, the Court applies a burden-shifting framework.[60] Initially, the burden of proof lies on the claimant; if the claimant supports his claim with sufficient facts or documentation, the claim is deemed *prima facie* valid.[61]   The burden then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the claim.[62]   "It is often said the objector must produce evidence equal in

---

[57]  *Walker v. Chrysler Corp.*, 601 F. Supp. 1358, 1360 (D. Del.) (*aff'd,* 780 F.2d 1017 (3d Cir. 1985)).

[58]  *See United States v. Gen. Instrument Corp.*, 87 F. Supp. 157, 165 (D.N.J. 1949).   *See also Green v. Dep't of Pub. Welfare of State of Del.*, 270 F. Supp. 173, 176 (D. Del. 1967).

[59]  *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51, 127 S. Ct. 1199, 1204-05, 167 L. Ed. 2d 178 (2007).   *See also Matter of Celeste Court Apartments, Inc.*, 47 B.R. 470, 473 (D. Del. 1985).

[60]  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

[61]  *Id.* at 173.

[62]  *Id.*

force to the *prima facie* case."[63]   If the objector does so, the burden then reverts to the claimant to prove its validity by a preponderance of the evidence.[64]

### c. Adjudication of Claim Objections on Summary Judgment

ELP does not dispute that Potter actually represented the Debtors in the DE Chancery Actions.  Potter has submitted invoices in support of its claims.  As a result, Potter's claims are *prima facie* valid.  At trial, ELP would therefore bear the burden of producing evidence sufficient to negate the *prima facie* validity of Potter's claim.

ELP, however, is moving for summary judgment and must demonstrate it is entitled to judgment as a matter of law.  As a result, ELP may not simply counter Potter's *prima facie* case; ELP must demonstrate that Potter could not prove the validity of its claim, at trial, by a preponderance of the evidence.  On summary judgment, ELP must prove that there is no genuine dispute that applicable law renders Potter's claim unenforceable. ELP therefore bears the burden of demonstrating that: (1) the law ELP cites is applicable; (2) the cited law renders Potter's claim unenforceable; and (3) Potter has no defense that would prevent application of the cited law.

## II. ELP has Failed to Demonstrate that it is Entitled to Summary Judgment

As the movant for summary judgment, ELP bears the burden of demonstrating that there is no genuine dispute of material fact and that ELP is entitled to judgment as a matter of law.  ELP has failed to carry this burden.

### a. ELP has failed to show that Potter was not validly engaged to represent the Debtors in the DE Chancery Actions.

ELP first argues that Potter and its clients conceded in the DE DPGA Action that the Debtors had defaulted under the Senior Credit Agreement and, therefore, Anderson

---

[63]   *Id*. at 173-174 (*citing In re Holm,* 931 F.2d 620, 623 (9th Cir.1991)).

[64]   *Id*. at 174.

lacked the authority to retain Potter to represent the Debtors.[65]  ELP asserts that by responding to the Complaint with a motion to dismiss or stay, the DE DPGA Defendants admitted the allegations of the Complaint.[66]  This argument is so contrary to both law and fact that it warrants no further discussion.

ELP's second argument is straightforward.  ELP claims that (1) the 2013 Settlement Agreement established that an Event of Default occurred in April 2012 and (2) the Pledge Agreements unambiguously entitled the Agent to appoint a new Manager following an Event of Default;[67] therefore, Trimont validly removed CA Capital as manager of the Debtors on July 2, 2013.  ELP asserts that, as a result, CA Capital lacked the authority to hire Potter to represent the Debtors in the DE Chancery Actions.[68]  ELP therefore concludes that Potter's claims against the Debtors are unenforceable, since CA Capital was no longer Manager of the Debtors when it retained Potter to represent the Debtors.

This argument fails for two reasons.  First, the record demonstrates that even if an Event of Default occurred in April 2012, that default may have been excused by law or equitable principles.  As a result, the Court cannot conclude that Trimont validly removed CA Capital as manager of the Debtors on July 2, 2013.  Second, ELP assumes, without citation to legal authority, that the settlement of a corporate control dispute retrospectively voids the decisions of a removed manager.  Because ELP has failed to show that this is applicable law, the Court cannot conclude that CA Capital lacked the authority to hire Potter on behalf of Debtors.

In both the FL Action and the DE DPGA Action, the defendants to those actions argued that (1) no Event of Default had occurred and (2) if an Event of Default had occurred, it was excusable because it was caused by the misconduct and bad faith of the

---

[65]  *ELP MSJ Brief* at p. 17.

[66]  *Id.*

[67]  *ELP MSJ Reply*, D.I. 417, at Ex. 2, p. 2.

[68]  *Id.* at p. 5.

Senior Lenders and GE Financial—Trimont's predecessor as Agent.[69]  No court ever adjudicated these defenses and counterclaims, and Anderson received $3,000,000 in exchange for these claims in the 2013 Settlement Agreement, lending them some credence.[70]

The 2013 Settlement Agreement only established that an Event of Default had occurred in 2012; it did not establish whether this default was legally excusable.  Even if "the plain and unambiguous terms of the Pledge Agreements permitted Trimont to remove CA Capital as manager"[71] after an Event of Default occurred, the Pledge Agreement must still be operative and the Event of Default must not be excusable by law.  ELP has not pointed to any provision in the 2013 Settlement Agreement stating that the Debtors' default was not excusable nor that the defenses and counterclaims raised in the FL Action were without merit.  As a result, ELP has failed to establish that Trimont's 2013 removal of CA Capital was valid and that CA Capital lacked the authority to retain Potter to represent the Debtors.

Furthermore, ELP has failed to prove that applicable law would disallow Potter's claims in any event.  ELP assumes, without citation to legal authority, that the settlement of a corporate control dispute retrospectively voids the decisions of the removed manager.  ELP further assumes, without citation to legal authority, that the defenses and counterclaims raised by the Debtors in the Florida Action and the DE Chancery Actions are irrelevant to this proceeding.  This Court may not grant summary judgment unless ELP has provided specific legal authority in support of these positions.

Finally, Potter has raised a credible argument that even if the Settlement Agreement retroactively established that CA Capital lacked actual authority to hire Potter to retain

---

[69]  *Potter MSJ Response* at p. 6 (citing Ex. D, ¶ 27-28, 63-104).

[70]  *ELP MSJ Reply* at Ex. 2, p. 9.

[71]  *ELP MSJ Reply* at p. 5.

the Debtors, Potter's claims against the Debtors are still enforceable.[72]  Potter analogizes this situation to corporate directors whose election is subsequently invalidated by a court; Delaware precedent holds that when a corporate director has been found to have been elected illegally and is subsequently removed from office, his actions dealing with third parties are not voidable because the director held *de facto* authority when those actions were taken.[73]   The cases cited by Potter explain that an invalidly elected director's *de facto* authority only ends when the director is removed from his position by a Court's authority or agreement.[74]   Potter thus argues that even if Trimont's 2013 removal of CA Capital was valid, because its validity was only settled retrospectively by the Settlement Agreement, CA Capital had *de facto* authority to retain Potter to represent the Debtors in the DE Chancery Actions.   This argument is sufficiently persuasive to warrant consideration at trial.

ELP curtly argues that the Court should ignore Potter's argument because it only cites analogous law.[75]  As the movant for summary judgment, however, ELP bears the burden of showing that it is entitled to judgment as a matter of law and that no issues warrant consideration at trial.   But ELP does not offer any precedent or statutory authority stating that when the removal of a manager is retrospectively validated, all of the actions taken by the removed manager post-removal but prior to validation are voidable; ELP just assumes that this is applicable law.[76]   The Court has no reason to make such an assumption; Potter, by demonstrating that its retention would be found

---

[72]  *Potter MSJ Response* at p. 21-22.

[73]  *Id.* at n. 10.

[74]  *See President & Fellows of Harvard Coll. v. Glancy*, 2003 WL 21026784, at *17 (Del. Ch. 2003); *Prickett v. Am. Steel & Pump Corp.*, 253 A.2d 86, 88-89 (Del. Ch. 1969); *Levin v. Metro-Goldwyn-Mayer, Inc.*, 221 A.2d 499, 503 (Del. Ch. 1966).

[75]  *ELP MSJ Reply* at p. 8, n. 9.  A puzzling argument, given that ELP relies on argument by analogy in a portion of its own briefing.  *See ELP MSJ Brief* at p. 21.

[76]  *ELP MSJ Reply* at p. 8.

valid in an analogous context, has clearly created an issue warranting trial.[77]  ELP cannot meet its burden by simply denying the relevance of Potter's analogy; ELP has the burden, at both summary judgment and at trial, to show that Delaware law on managers differs from Delaware law on corporate directors.[78]  Because ELP has failed to do so, the Court may not grant summary judgment in favor of ELP.

### b. ELP has failed to show that the Debtors did not benefit from Potter's representation.

ELP next argues that the Debtors received no benefit from Potter's representation in the DE Chancery Actions and, therefore, Potter fees should be disallowed.  This theory fails for two reasons.

First, the record clearly shows a genuine dispute of fact as to whether the Debtors received a benefit from Potter's representation.  The briefings from the DE DPGA Action plausibly argue that in order for the Delaware Chancery Court to issue declaratory judgment validating the Agent's replacement of CA Capital, the Chancery Court would necessarily need to determine whether an inexcusable Event of Default had occurred under the Senior Creditor Agreement.[79]  Thus, even if the Debtors had no interest in the "outcome" of the DE Chancery Actions, i.e., whether CA Capital had been removed as manager, there is evidence that the Debtors had an interest in the legal issues the Chancery Court would necessarily adjudicate in the DE Chancery Actions.

Second, ELP has the burden of showing it is entitled to judgment as a matter of law.  But ELP has failed to show a proper legal basis for why a lack of benefit to the Debtors

---

[77]  Even if Potter had not demonstrated that its retention would be valid in an analogous context, ELP would not be entitled to summary judgment.  It is ELP who bears the burden of showing applicable law renders ELP's claim unenforceable.  ELP cannot simply assume that the law is what ELP wishes it to be.

[78]  Nor may ELP rest on its laurels and force the Court to ascertain the applicable law on manager controlled LLCs.  Because Potter's claim is *prima facie* valid, ELP *must* at least identify the specific applicable law it believes to render Potter's claim unenforceable.

[79]  *Potter MSJ Response* at Ex. E, p. 12.

justifies the disallowance of Potter's fees.  In their initial brief, ELP relied entirely on an argument by analogy to corporate takeovers.[80]  Potter rebuts this argument by noting that both cases involve an attempt by one party to have its costs paid by *another party*.[81] The Court agrees with Potter that neither of these cases can support the proposition that a party may avoid paying *its own attorneys* because of a lack of benefit.

ELP, in **its reply brief**,[82] raises 11 U.S.C. § 502(b)(4), which instructs the Court to disallow the claim(s) of an attorney or insider of the debtor to the extent the claim(s) exceed(s) the reasonable value of the services rendered.  ELP, prior to its reply brief, had never raised § 502(b)(4) as a reason for reducing Potter's claim.[83]  The Court therefore holds that this argument is improperly presented and consideration of it would be prejudicial to Potter.[84]  Moreover, ELP simply fails to make a justifiable argument under this provision of § 502(b).  ELP does not attack the reasonableness of Potter's fees, but simply reiterates its argument that the Debtors did not receive any value from Potter's services.[85]  11 U.S.C. § 502(b)(4) is not a subjective test of the "value received" by the Debtor: if it were, this Court could never compensate any attorney of the debtor for its fees in an action that the debtor lost.  The question under § 502(b)(4) is whether the attorney's fees were objectively reasonable, and ELP has not submitted any evidence showing that Potter's fees were not.  As a result, the Court cannot grant summary judgment under this theory.

---

[80]   *ELP MSJ Brief* at p. 21-22.

[81]   *Potter MSJ Response* at p. 29.

[82]   *ELP MSJ Reply* at p. 13-14.

[83]   *ELP Claim Objection* at p. 6 (requesting relief solely under 11 U.S.C. § 502(b)(1)).

[84]   ELP did reserve its right to object under § 502(b)(4).  *ELP Claim Objection* at p. 9, ¶ 4.  If ELP wishes to amend its claim objection to add an objection under § 502(b)(4), it may do so.  It may not, however, raise the issue for the first time in its reply brief upon summary judgment.

[85]   *ELP MSJ Reply* at p. 14 (stating, without any further citation or development, that "far from providing any value to the Operating Debtors, Potter's services likely caused the Operating Debtors harm").

**c. ELP has failed to identify a conflict of interest that necessitates a written retention agreement.**

ELP's third theory for disallowance is straightforward.  ELP argues that Potter, by representing both the Debtors and CA Capital in the DE Chancery Actions, was "conflicted" under the Delaware Lawyers' Rules of Professional Conduct (the "*DLRPC*").[86]  The DLRPC require that a conflicted attorney secure a written waiver from the affected clients.[87]  Because the record contains no written waiver of this conflict, ELP asserts that Potter's claim against the Debtors is unenforceable.[88]  The Court cannot enter summary judgment under this theory, however, because there is a genuine dispute as to whether Potter was conflicted.

The Court  first notes the contradictory nature of ELP's theories.  ELP argues that the Debtors had no interest in the DE Chancery Actions.  Yet ELP also asserts that Potter had a conflict of interest in representing both CA Capital and the Debtors in those actions.   Under the DLRPC, a concurrent conflict of interest exists if "(1) the representation of one client will be directly adverse to another client" or "(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person…"[89]  As a matter of logic, the Debtors must have had some interest in the DE Chancery Actions for Potter to be conflicted by representing both CA Capital and the Debtors.  If the Debtors had no interest in the DE Chancery Actions, then no conflict could exist, since CA Capital's interest would not be directly adverse or limit Potter's ability to represent the Debtors.

The Court must deny summary judgment under this theory because there is a genuine dispute as to whether Potter was conflicted by representing CA Capital and the

---

[86]  *ELP MSJ Brief* at p. 19.

[87]  *See Matter of Katz*, 981 A.2d 1133, 1141 (Del. 2009).

[88]  *ELP MSJ Brief* at p. 20.

[89]  Del. R. Prof. C.,  Rule 1.7(a).

Debtors.    First, ELP's argument that a conflict of interest existed is based on a presumption that CA Capital was validly removed as manager by Trimont on July 2, 2013;[90] a premise that itself is subject to a genuine dispute of fact.  Second, as explained above, there is evidence that the Debtors had a substantial interest in the issues being decided in the DE DPGA Action; namely, whether the Debtors had committed an inexcusable Event of Default in 2012.    In order to determine whether Potter was conflicted in representing both the Debtors and CA Capital, the Court need ask only a single question—could Potter have vindicated the interests of CA Capital by arguing against the interests of the Debtors, or vice versa?

No.  As ELP has repeatedly emphasized, the Agent's power to replace CA Capital as manager of the Debtors was contingent solely upon an Event of Default by the Debtors. As ELP sees it, under the Pledge Agreements, as soon an inexcusable Event of Default occurred, the Agent was entitled to remove CA Capital and CA Capital's only defense on the merits to the DE DPGA Action would have been to deny that an inexcusable Event of Default had occurred.  Thus, CA Capital would necessarily have to vindicate the Debtors' interests in order to vindicate its own.  Nor could the Debtors vindicate their interests without vindicating CA Capital's interests.

Third, ELP identifies only one specific conflict of interest; ELP asserts that it was "adverse to the Debtors' interest to allow CA Capital to cause the Debtors to spend approximately $230,000 [in attorneys' fees] to simply delay the inevitable."[91]   In other words, ELP claims that hiring an attorney to represent the Debtors in the DE Chancery Actions, at all, was a conflict.  This logic is frivolous.  The Debtors were necessary parties to the DE Chancery Actions; as corporate entities controlled entirely by their Manager, CA Capital *had to hire someone to represent them*.  If the Court accepted ELP's logic, then even if CA Capital had hired Potter for itself and hired another attorney to

---

[90]    *ELP MSJ Reply* at p. 9.

[91]    *Id.* at p. 11-12.

represent the Debtors, that other attorney's fees would not be enforceable against the Debtors.

Finally, the Court could interpret ELP's argument another way; ELP might believe that CA Capital benefited far more from Potter's representation and therefore the Debtors should not be held jointly and severally liable for Potter's fees. Even if this were true, this fact would not create a conflict of interest under the DLRPC. As a result, the DLRPC would not render Potter's claim unenforceable. ELP would need to demonstrate that a different applicable law, because of this fact, would render Potter's claim unenforceable. Because ELP has not provided any legal authority that makes this fact relevant, this fact, even if true, does not present a basis for summary judgment.

### d. ELP has failed to show that the Settlement Agreement bars Potter's claims.

Finally, ELP argues that the 2013 Settlement Agreement approved by this Court bars Potter's claims against the Operating Debtors.[92] As Potter explains, they were not and could not be bound by a contract to which they were not a party.[93] That is the law and ELP cannot avoid it because it is inconvenient. If ELP believes that "Anderson and CA Capital are the proper parties from which to seek payment of Potter's claims,"[94] then ELP may bring a claim for contribution against them and prove that, under the settlement agreement, Anderson and CA Capital are responsible for Potter's fees. ELP may succeed. But that is irrelevant to the question of whether Potter may bring its claim against the Operating Debtors. Because ELP has not presented any legal authority that would allow the Court to hold that the 2013 Settlement binds Potter, summary judgment may not be granted under this theory.

---

[92] *ELP MSJ Brief* at p. 22-23.

[93] *Potter MSJ Response* at p. 31 (*citing Am. Homepatient, Inc. v. Collier*, 2006 WL 1134170, at *2 (Del. Ch.); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Kuroda v. SPJS Holdings, L.L.C.*, 2010 WL 4880659, at *3 (Del. Ch.)).

[94] *ELP MSJ Reply* at p. 15.

## CONCLUSION

As set forth above, the Court will deny ELP's request for summary judgment. The record demonstrates that multiple material issues of fact exist on whether Potter was validly retained to represent the Debtors and whether the Debtors benefited from this representation. Moreover, ELP has failed to specify and support a contractual or equitable basis for disallowance. ELP has therefore failed to demonstrate that applicable law would render Potter's claims unenforceable. The record also shows a genuine dispute of material fact as to whether Potter was conflicted by jointly representing CA Capital and the Debtors. Finally, ELP has not presented a legal basis for its belief that the 2013 Settlement Agreement binds Potter. Regardless of who "should" have to pay Potter's claims, the 2013 Settlement Agreement provides no legal basis for disallowance. Because ELP has not shown that any applicable law renders Potter's claims unenforceable, the Court must deny the request for summary judgment.